FLEISHEL & KIMSEY *vs.* HIGHTOWER *et al.*

1. The town of Jonesboro is empowered to own and use a public school-house for the education of the children thereof, and the authorities of said town may use the same in such manner as in their discretion will best promote the end in view—the education of the children—either by a free public school or by renting the said school-house to private teachers, at their option.
2. Such school-house is not subject to levy and sale by virtue of judgment and execution against the town, and consequently, if the house be destroyed by fire, the insurance therefor cannot be reached by garnishment by the judgment creditor.

Municipal corporations. Levy and sale. Garnishments. Debtor and creditor. Before Judge HILLYER. Clayton County. At Chambers. April 18, 1879.

Hightower *et al.* filed their bill against the Intendant, etc., of Jonesboro and the Southern Mutual Insurance Company, making, in brief, the following case: The town of Jonesboro was incorporated in 1872. By the charter the intendant and wardens were empowered to levy a tax exclusively for educational purposes, the entire tax on property not

being increased to more than one per cent. The provision of the charter is as follows:

"*Be it further enacted,* That said intendant and commissioners shall have authority to issue bonds in the name of the intendant and commissioners and their successors in office, for a sum not exceeding ten thousand dollars, at such reasonable rate of interest, and to run for such length of time as may be fixed and agreed upon by the board, the funds raised from the sale of said bonds to be used by the authorities of said town for educational purposes exclusively; and they shall have power and authority to tax the people and property of said town for the payment of the same with interest; *Provided,* that in no event shall the entire tax levied upon the property for all purposes be more than one per cent, etc."

In pursuance of this power, a tax was levied and collected, a building bought from W. A. Melson, and furnished, teachers employed, and an academy regularly put in operation. The building was insured in the Southern Mutual Insurance Company. It recently burned, and $1,000.00 insurance became due, which the company is willing to pay. There is a general desire on the part of the citizens and property-holders (among whom are complainants) to have the academy rebuilt, and it is necessary that the insurance, when collected, should be applied to that purpose. A public meeting has been held to take action in regard to the matter, and among other things to communicate with council. To the astonishment of complainants the latter announced their determination to appropriate the insurance fund to the payment of debts of the corporation entirely disconnected with the school. The object of the bill was to enjoin this appropriation, and to have a receiver appointed to collect the insurance and appropriate it to rebuilding the school.

Afterwards, by amendment Fleishel & Kimsey were made parties defendant as creditors of the town who had garnisheed the insurance company, and also one Bernhart, a creditor who was proceeding by execution. The history of the purchase was also changed, so as to be as follows: From 1866 to 1869, A. D. Candler taught school in Jonesboro

in the building known as the Clayton High School. For improvements, advances, etc., the trustees of the school became indebted to him. W. A. Melson paid off this debt and took a deed to the property to secure himself. In 1875 the white citizens of the town agitated the plan of purchasing the school property by contribution or taxation. Their action was not under the charter, but in their unorganized capacity. They needed some regular channel to work through, and therefore communicated with the town council. Through the council an election was held to determine the desire of the citizens on this subject. The voters were unanimously in favor of the purchase. The understanding and agreement was, that the title should be made to the trustees of the Clayton High School, and that they should control the enterprise. The tax was laid and the property purchased; but the *personnel* of the council changed, and the new council took the title to themselves instead of having it made to the trustees. The new council have recognized the property as not theirs, but as belonging to the trustees. For the year 1878, the council levied a tax in connection with the school. Complainants and others, believing the tax to be illegal, filed a bill to enjoin its collection. A meeting of citizens was had, and a settlement made with council by which the bill was dismissed and some of the tax actually paid. In consideration of this the council were to turn over the property and the insurance policy to the trustees of the Clayton High School. This they had failed to do. Kimsey was a member of this council, and was present at its meetings. In addition to the prayer for injunction, etc., it was prayed that the council be required to make the transfer, etc., as above stated.

The defendants demurred to the bill. The answer of the council differed from the bill in the following material points: They admit the collection of a tax, an advisory election in regard to purchasing the Melson property, and its subsequent purchase, but they deny that title was to be made to the trustees of the High School. They say that

the understanding was that when the property was fully paid for they should elect trustees; deny that they elected a teacher, but they say that the use of the school-house free was tendered to one Looney, who took it and used it for school purposes as a private enterprise. They deny any unwillingness to apply the money to rebuilding the house, etc., and join in the prayer for that purpose. They deny the agreement stated in the bill, but say that it was understood between the council and citizens that if the latter would dismiss their bill in resistance to the tax levied, and pay the tax, council would turn over the policy to any body of responsible men who might be agreed upon; that this agreement was not carried out—the tax not all being paid.

The answer of Fleishel & Kimsey presented the following material points: They deny that the election was held to determine the question of levying a tax, or that any tax was laid under the charter or otherwise for educational purposes alone, or that the property has ever been dedicated to such use. They say that the election was simply an advisory one to test the desire of the citizens as to purchasing the Melson property; that the tax was levied under a general ordinance including this and other objects together, and not as a special educational tax; that the purchase was by the town, and the property belonged to it as a corporation, and is subject to its debts. They give the same account of the use of the school by Looney as that stated above, adding that repairs, etc., had been made and paid for by council with money raised by general taxation. Of the agreement between citizens and council they give this account: A tax was levied for 1878; many paid it; complainants and others declared their intention to resist it by bill; the town owed these defendants; the school burned, and complainants filed their original bill in this case; these defendants garnisheed the insurance company, and were made parties to the bill. There was much discussion as to some plan of settlement. Meetings were held, committees

appointed, etc., etc.   It was finally understood that if all the tax was paid the debts could be discharged, or at least much reduced, and the policy turned over to some proper person to be collected and the proceeds applied to rebuilding the school, the trustees of the high school being suggested for the purpose; but this has never been completed by the payment of the tax, and the trustees would not now undertake the business.   They deny any misconduct or misleading of others, or committal of themselves by reason of Kimsey's presence in the council.

The chancellor granted the injunction prayed for, and Fleishel & Kimsey excepted.

J. A. ANDERSON; MYNATT & HOWELL, for plaintiffs in error.

TIGNER & HODNETT; STEWART & HALL, for defendants.

JACKSON, Justice.

1. By charter, the town of Jonesboro is empowered to hold title to real estate for school purposes, and to use the school-house erected thereon for educational purposes. See charter,

If so, we cannot see that it makes any difference whether they run the school as a free school or charge for tuition, or rent the property to private teachers.   The great purpose of the grant is to educate the children of the town, and the discretion how best to use the property to that end is in the commissioners of the town.

2. Such school-house cannot be seized and sold under execution for debts of the town.   If not, and the town keeps the house insured, the insurance money cannot be reached by garnishment of the insurance company on the part of the judgment creditor.

The object of this bill is to stop the fund in the hands of the insurance company, so as to apply it to those who

seek so to subject it. The chancellor refused the injunction, and was right in so doing.

Judgment affirmed.