MOSS *v.* THE CITY COUNCIL OF AUGUSTA.

A municipal corporation is not liable in damages to the owner of a dog for the wanton and malicious killing of the animal by a person appointed by municipal authority to execute an ordinance providing for the killing of all dogs found running at large in the city during a designated period, except such as might wear collars provided by the city for their protection. This is true, although the dog in question was, at the time of the killing, provided with and wearing a collar as prescribed, and although the killing was done under a pretence of carrying out the ordinance, the validity of the ordinance not being questioned in the present controversy.

July 16, 1894.

Action for damages. Before Judge EVE. City court of Richmond county. November term, 1893.

Moss sued the City Council of Augusta, alleging: Several years ago he bought a fine young collie dog, for

which he paid $25, and which he took to his home and carefully raised as a pet in his family. Defendant has, and for many years has had, in force in the city ordinances providing that the mayor shall provide annually a sufficient number of collars or badges, shall appoint some suitable person to dispense them, and the person so appointed shall furnish the owner of any dog with a collar to be worn by the dog, upon payment of $1.25, which shall protect dogs wearing the same from being killed, except during an alarm of hydrophobia in the city, or in the event of any dog wearing such collar being dangerous to the life or safety of any person; that all dogs found running at large in Augusta during the summer months, and such other times as the council might designate, except such as might wear a collar or badge as provided above, should be shot; and that it should be the duty of the mayor to appoint one or more discreet men to execute this order, and he should give ten days notice in the official gazette of the city of the time of commencing to shoot dogs as above mentioned. Before the time designated for shooting dogs in 1892, collars were duly furnished, the sale of the same arranged for, and notice of shooting given, as provided for in the ordinances. In 1892, in full time as required by said ordinances and notices, petitioner bought a collar for his dog, paying for it $1.25, though its actual cost to the city was not more than twenty-five cents, and put it on his dog's neck. J. W. Prescott was duly appointed to execute said ordinances in reference to shooting dogs. On July 19, 1892, he shot and killed the dog in the street near petitioner's residence, under the claim or excuse of carrying out said ordinances. At the time of the shooting the dog had on its neck said collar which the ordinance declares shall protect dogs wearing the same from being killed ; there was no alarm of hydrophobia in the city, nor was the dog dangerous to the life or safety of

any person.   The dog was then of the actual market value of $125, and, because of being a pet in petitioner's family, was of far more value.   Petitioner claims that defendant is liable to him $125 for the killing of the dog, because Prescott was not a discreet man as required by the ordinance, his want of discretion appearing more especially from the fact that he shot the dog while the collar was on its neck and exposed to the view of any one who would take the precaution to look at it, and the shooting was wanton and malicious in the eye of the law; and because defendant contracted with plaintiff, if he bought a collar for $1.25 and put it on his dog, the dog should be protected from being killed under said ordinances, which contract was broken in the manner stated.

Defendant demurred upon the ground that the declaration set forth no cause of action, because defendant was not liable for the alleged tort, because the dog was not the subject-matter of a tort, and because the dog could not be the subject-matter of a contract between defendant and petitioner.   The demurrer was sustained.

FLEMING & ALEXANDER, for plaintiff.
WILLIAM T. DAVIDSON, for defendant.

LUMPKIN, Justice.

The facts appear in the reporter's statement.   No question was made in the present case as to the validity of the ordinance therein mentioned, and our decision has been made upon the assumption that the municipal authorities of Augusta had the right to adopt this ordinance.

The doctrine that a city is not liable for the illegal and tortious acts of its police officers has been well settled by repeated decisions of this court.   *Attaway* v. *Mayor and Aldermen of Cartersville*, 68 *Ga.* 740, and cases there cited.   The learned counsel for the plaintiff

in error recognized and admitted the force and effect of the rule established by these cases, but sought to draw a distinction between them and the case at bar, upon the idea that the "dog-killer" appointed under the ordinance in question was not a police officer, but rather an employee acting as agent for the city in a different capacity from that of a policeman. Accordingly, they insisted that he was acting in the performance of a duty private in its nature, and that, in appointing him to discharge this duty the municipal authorities were not exercising a power belonging to the city as a political division of the State. Their contention was, that the killing of dogs under the provisions of this ordinance was a sort of private enterprise in which the general welfare of the public was not involved. We cannot concur in these views. The "dog-killer" was, in a large sense, a police officer of the city; and in the sphere of his particular business as such, as much a public servant as a policeman charged with the duty of making arrests and preserving the public peace and safety. We are therefore quite confident that the city was no more liable for the wanton and malicious acts of a person appointed to execute the "dog-killing" ordinance, than it would be for such acts of a regular full-fledged policeman.

Nor do we think there is any merit in the contention that the city, in effect, contracted with the plaintiff, in consideration of his purchasing from the city a collar for his dog, that it would protect the animal, while wearing the collar, from being killed. The ordinance was strictly a police regulation, covering an element of taxation, but it did not raise any contractual relations whatever between the city and the owners of dogs within the corporation.

The trial court was right in sustaining the demurrer to the declaration.          *Judgment affirmed.*