## NEAL–MILLARD COMPANY *v.* TRUSTEES OF CHATHAM ACADEMY.

The buildings held by the Trustees of Chatham Academy for educational purposes are public property, and, in the absence of an express statute authorizing a materialman's lien against public property, are not subject to such a lien.

Argued October 6,—Decided November 11, 1904.

Foreclosure of lien.    Before Judge Cann.    Chatham superior court.    February 10, 1904.

Neal–Millard Company brought an action against the Stewart Contracting Company and the Trustees of Chatham Academy, to enforce a materialman's lien.    The original petition averred, that the Trustees of Chatham Academy, naming them, were indebted to the plaintiff in a stated amount, as by a bill of particulars attached to the petition, for material furnished by the plaintiff to the Stewart Contracting Company, for the erection and construction of "that certain building or institution known as Chatham Academy, in the city of Savannah, located on" named lots in Brown ward, which material went into and was consumed in the erection of said building, the legal title to which was in the Trustees of Chatham Academy; that the plaintiff had filed a lien against this property, had brought suit within the period required by the statute for the enforcement of such lien; and that a lien

was claimed on the property for the amount of the debt. An amendment to the petition averred, that the property on which the lien was claimed was "not a part of the vacant land originally granted to the said Trustees of Chatham Academy by the State," but that title to the property came to the Trustees of Chatham Academy through two conveyances: (1) a conditional grant from the Mayor and Aldermen of the City of Savannah to the Trustees of Chatham Academy and the Union Society, dated May 16, 1810; and (2) a conveyance from the Union Society to such trustees, dated February 16, 1887. It appeared from the exhibits of these conveyances, attached to the amendment, that the grant to the Trustees of Chatham Academy and the Union Society was made to them in their corporate capacities, for their joint use and "for the purpose of building and erecting an edifice, suitable for the education, boarding, lodging, and accommodation of youths, and for no other purpose or use whatsoever;" and that the conveyance of the Union Society to the Trustees of Chatham Academy was authorized by a decree of Chatham superior court, predicated on the fact that such conveyance "will promote the cause of public education in the City of Savannah and the County of Chatham," as is set out in the conveyance. It was further averred in the amendment, that the condition of the grant from the mayor and aldermen had been violated, "in that, prior to the year 1887, the building facing on Bull Street was, for many years, used for hotel purposes, and such building facing on Bull Street was not used for a school building until after the transfer from the Union Society to the Trustees of Chatham Academy, and was not known as a part of Chatham Academy until after such transfer;" that after 1887 the Trustees of Chatham Academy rented to the Board of Public Education for the City of Savannah and County of Chatham the two edifices and structures erected on said lots, for a period of ten years, at an annual rental of one dollar, imposing upon the Board of Public Education all the expenses of "furnishing, heating, cleaning, fitting, and keeping in repair the said buildings," all of which amounted to and was an expense to the Board of Public Education, notwithstanding the said trustees had funds from which said expenses could be paid; that a fire occurred in 1900, which destroyed the building facing on Drayton street and greatly injured and damaged the building

facing on Bull street, and that the material furnished by the plaintiff was used in rebuilding and repairing the structure so destroyed and injured; that the Trustees of Chatham Academy would not agree to reconstruct such buildings unless the Board of Public Education would bind itself to pay the trustees a rental for such buildings of $5,000 per annum, up to and including the year 1906, and that, in addition thereto, the Board of Public Education is charged with the duty of maintaining such buildings, whereas such trustees have funds in hand with which said expenses could be defrayed, and could relieve the public school system of Chatham county thereof, and that by charging such rental and imposing the burden for maintenance of the buildings the Trustees of Chatham Academy are imposing a large burden on the public school system of Chatham county; that such trustees hold personal property, invested in interest-bearing stocks and bonds, which stocks and bonds are subject to State, county, and municipal taxation, and that they are investing funds paid them by the Board of Public Education in interest-bearing stocks and bonds, all of which are subject to be taxed, and, in so investing such funds, such trustees are using the same for corporate profit or income. The Trustees of Chatham Academy demurred to the petition, as amended, on the ground that it did not set forth any legal ground under which the lien sought to be set up and foreclosed could be enforced against the property described in the petition. The demurrer was sustained, and the plaintiff excepted.

Citations from the briefs, as to materialman's lien: 61 *Ga.* 584; 62 *Ga.* 324; 72 *Ga.* 187; 73 *Ga.* 234, 322; 85 *Ga.* 587; 100 *Ga.* 603; 113 *Ga.* 74; 39 Ill. 610; 17 Fla. 162; 3 Allen, 207; 30 La. Ann. 361; 40 La. Ann. 264; 13 Kans. 17; 17 Kans. 104, 522; 52 Kans. 253; 1 Kans. App. 113; 34 Cent. Dig. cols. 2105–7; 39 N. W. 801; 57 N. E. 533; 1 N. E. 389; 33 Am. R. 116; 26 Pac. 646; 49 Pac. 445; 44 Pac. 709.

*Twiggs & Oliver*, for plaintiff. *Lawton & Cunningham, Garrard & Meldrim,* and *H. W. Johnson,* for defendants.

FISH, P. J. (After stating the foregoing facts.) The act establishing Chatham Academy was passed February 1, 1788. Watkins' Dig. 372. That act provides: "That an academy or seminary of learning be erected in the said county [of Chatham], at

such place as the majority of the trustees hereinafter appointed shall think fit, and that the said trustees or a majority of them shall proceed to transact the business of the said academy." The sixth and seventh sections of the act are as follows: " VI. *And whereas,* There may be in the said county of Chatham lands unlocated and not granted, *Be it further enacted,* That all such vacant lands not contained within any tract for which a grant has been obtained be reserved for the use of the said academy or seminary of learning, *Provided,* that the quantity of vacant land thus reserved shall not exceed five thousand acres. VII. *And be it further enacted,* That one thousand pounds specie of confiscated property, lying in the county of Chatham, be put into the hands of the said trustees by the sheriff of said county. . ." The eighth section names the trustees of said academy. The ninth section provides for supplying the places of any of the trustees who shall decline to act, or shall resign, or die, and provides that " The remaining trustees, or a majority of them, shall nominate three persons, one of whom shall be appointed by the executive to supply the vacancy." This act was in conformity to the 54th section of the constitution of 1777, which provided that " Schools shall be located in each county, and supported at the general expense of the State and as the legislature shall hereafter point out and direct." Marbury & Crawford's Dig. 12. On December 21, 1829, an act was passed, to ascertain, dispose of, and appropriate the ungranted lands of Chatham county, which appointed commissioners, who were directed to have such lands surveyed, and required the Trustees of Chatham Academy to select five thousand acres of such land within six months after the survey and map should be completed and notice thereof given to them, the lands so selected to be "for the sole use, benefit, and behoof of said academy;" and the act provided that the surplus land should be sold and the interest on the proceeds of the sale should be paid annually to the Free School and Union Society in the city of Savannah. See Dawson's Compilation, 272. Under an act passed in 1866 (Acts 1865-6, p. 265), the Chatham Academy, Free School, or the Union Society was authorized to sell its interests in ungranted lands held under the act of 1829 to either of the other "societies." Under this act the Union Society was authorized to sell its interest in such lands to the

Chatham Academy.     On February 1, 1788, the same day the Chatham Academy was incorporated, the legislature passed an act incorporating the Glynn County Academy.     Watkins' Dig. 381.     For a history of this latter academy see *Dart* v. *Houston,* 22 *Ga.* 532, where it was held (p. 535): "The funds of the academy are public property."     In *Board of Education of Glynn County* v. *Brunswick,* 72 *Ga.* 353, 357, Mr. Justice Hall, in delivering the opinion, said: " The whole history of Glynn County Academy shows that it was designed to afford free education to the children and youth of the county, and was not for the exclusive benefit of those residing within the limits of the city of Brunswick; it is not and never was a private or corporate, but a public eleemosynary establishment."

In view of the legislation to which we have referred, in reference to the Chatham Academy, and what has been said by this court in the decisions above cited, in reference to the Glynn County Academy, a similar institution, there can be no question that the property held by the Trustees of Chatham Academy, upon which it is sought to enforce a lien in the present case, is public property.     Section 2801, paragraph 2, of the Civil Code, as amended by the acts of December 19, 1897, and December 19, 1899 (Acts 1899, pp. 33, 34), provides:     "When work done or material furnished for the improvement of real estate is done or may be furnished upon the employment of a contractor, or some other person than the owner, then, and in that case, the lien given by this section shall attach upon the real estate improved, as against such true owner, for the amount of the work done, or material furnished, unless such true owner shows that such lien has been waived in writing, or produces the sworn statement of the contractor, or other person, at whose instance the work was done or material was furnished, that the agreed price or reasonable value thereof has been paid ; provided, that in no event shall the aggregate amount of liens set up hereby exceed the contract price of the improvements made."     It will be seen that there is nothing in the statute which makes it apparent that the legislature intended it to apply to public buildings or other property devoted to public use.     " As a general rule, in the absence of some expression in the statute making it evident that the legislature intended it so to apply, a mechanic's-lien statute will not be con-

strued to give a lien upon public buildings or other public prop-
erty devoted to public use.     Thus, a lien can not be acquired or
enforced against a public-school building or the lot on which it is
situated, a court-house, a city-hall, a public bridge which is part of
a public highway, or the waterworks of a municipality.     In some
cases the reason given for this rule is that to hold otherwise
would be contrary to public policy, while in others the rule has
been considered to - be based upon the fact that the ordinary
methods provided by statute for the enforcement of the lien can
not be pursued against public property, and hence, there being no
mode of enforcing the lien, it can not exist; and it has also been
held that the provisions of the mechanic's-lien law could not be
applied to public-school buildings, because the relation sustained
by a school district to the school property was not that of owner,
within the meaning of the statute, and hence a contract with the
district could not give rise to the lien." 20 Am. & Eng. Enc. L.
295, 296.    To the same effect, see Boisot on Mechanic's Liens,
§ 208; Phillips on Mech. Liens, § 179; Kneeland on Mech. Liens,
§ 84; 2 Jones on Liens, § 1375.     The property held by the
trustees of Richmond Academy was under a trust created by the
State, similar to the one under which the trustees of Chatham
Academy hold the property involved in the present case; and in
*Trustees* v. *City Council*, 90 *Ga.* 634, it was held that the prop-
erty held by the Trustees of the Academy of Richmond County
was exempt from taxation by the City Council of Augusta, on the
ground that it was public property.

Much stress has been laid, in the argument here, by counsel for
the plaintiff in error, upon the allegations of the petition as to the
manner in which the property has been and is being used by the
trustees of the academy; and, as we understand their contention,
it amounts to this: that because the allegations of the petition, as
they insist, show that the property is not used in accordance with
the purposes which actuated the State in the creation and endow-
ment of Chatham Academy, as shown by the legislation above
referred to, and the Mayor and Aldermen of the City of Savannah
in making the grant set forth in the petition, it has become
private or corporate, as distinguished from public property, and
hence is not exempt, as public property, from the lien law which
the plaintiff invokes.    We will not stop to consider whether or

not the allegations of the plaintiff's petition show that the property has been diverted from the purposes intended by the State and the municipal corporation; for even granting that they do, the argument based on these allegations is fallacious. Nothing that the trustees of the academy might do in reference to the property or its management could divest it of its public character, and convert it into private or corporate property. They have no beneficial interest in it, or its proceeds, but only a naked power to be exercised for the public benefit. If they should divert the property, or funds derived from it, from the uses intended by the State in the creation and endowment of the eleemosynary corporation, and by the Mayor and Aldermen of the City of Savannah in the grant of the lots on which to erect the buildings, the public would have the right to compel the application of the property and funds to such uses; but no unauthorized acts of theirs could divest the property of its public character. . If there is anything in the contention that the grant from the municipality was conditional and the conditions have been broken, then clearly, whatever may be the effect of a breach of the conditions of the grant, such breach could not destroy the public character of the property. Even if it should be conceded that the municipality would have the right to re-enter for a condition broken, the land would be as much public property in the hands of the municipality as it is in the hands of the Trustees of Chatham Academy.

Certain observations by the present Chief Justice in *Trustees* v. *City Council*, supra, are peculiarly relevant and appropriate in the present case. On page 646 he said: "In view of the legislation to which we have referred, there can be no question as to the public character of the institution originally. The property vested in the trustees was public property and was committed to them for a public purpose. No private interest of any kind was acquired. The beneficial interest was in the public, and the trustees were merely agents of the State for the administration of the fund and the management of the institution. Since that time there has been no legislation changing the public character of the trust or parting with the control of the State over the institution or the fund connected with it. Mere non-interference with the control exercised by the trustees could not affect the rights of the State or divest the institution or the property of its public char-

acter.      The right of the State as to property held in this manner was under consideration by this court in *Dart et al.* v. *Houston et al.*, 22 *Ga.* 506.     It was there complained by the plaintiffs in error that the court below erred in deciding that the Glynn County Academy, an institution endowed in the same manner as the Richmond County Academy [and, we may add, as Chatham Academy], was a public corporation, and that the trustees had no beneficial interest in the fund, but only a naked power which the State could resume at pleasure.     This court affirmed the judgment, and held that the funds of the academy were public property and that the control of the institution was in the State."

In view of the contention of the plaintiff in error as to the effect of the act of the Trustees of Chatham Academy in renting the property in controversy to the Board of Public Education for the City of Savannah and County of Chatham, the case of *Fleishel* v. *Hightower*, 62 *Ga.* 324, is directly in point.  It was there held: "1. The town of Jonesboro is empowered to own and use a public school-house for the education of the children thereof, and the authorities of said town may use the same in such manner as in their discretion will best promote the end in view,—the education of the children—either by a free public school or by renting the said school-house to private teachers, at their option.     2. Such school-house is not subject to levy and sale by virtue of judgment and execution against the town, and consequently, if the house be destroyed by fire, the insurance thereof can not be reached by garnishment by the judgment creditor."     In this connection, see also *Curry* v. *Savannah*, 64 *Ga.* 290; *City of Albany* v. *Lynch*, 119 *Ga.* 491.

Our conclusion is, that the property held by the Trustees of Chatham Academy is public property, and, therefore, not subject to a materialman's lien, as there is no express statute in this State authorizing such a lien against public property.  Consequently there was no error in sustaining the demurrer, and the judgment of the court below is

*Affirmed.     All the Justices concur.*