## WATSON *v.* CITY OF ATLANTA.

A petition is demurrable where it is alleged that the plaintiff was injured in consequence of being struck by an ambulance which was negligently driven against him while he was in the exercise of due care, it appearing from the remainder of the petition that the ambulance belonged to and was being operated for a public hospital of a municipal corporation, which was under the control of the municipality through its board of officers, although it is averred that in the maintenance of the hospital the municipality "charged fees for patients entering therein," this last averment not being tantamount to an allegation that the municipality maintained and operated the hospital for pecuniary gain and private profit.

JUNE 13, 1911.

Action for damages. Before Judge Pendleton. Fulton superior court. June 1, 1910.

*R. B. Blackburn,* for plaintiff.

*J. L. Mayson* and *W. D. Ellis Jr.,* for defendant.

BECK, J. This was a suit against the City of Atlanta to recover damages for personal injuries alleged to have been sustained by the plaintiff in consequence of being run upon and knocked down by a Grady Hospital ambulance in charge of and under the control of agents and employees of the city, and it is alleged that plaintiff's injuries were caused by the negligence of the defendant, through its agents and employees, in the manner in which the horses pulling the ambulance were driven, to wit, at an unlawful rate of speed. It is also alleged that "said Grady Hospital was under the control of the City of Atlanta, through its Board of Officers, and that in the maintenance of said Grady Hospital the City of Atlanta charged fees for patients entering therein." The defendant filed a general demurrer to the petition, which was sustained by the court below, and the plaintiff excepted.

Section 33 of the charter of the City of Atlanta provides: "The said Mayor and General Council shall have full power and authority to pass all by-laws and ordinances respecting public buildings and grounds, workhouses, public houses, carriages, wagons, carts, drays, pumps, wells, springs, fire-engines, care of the poor, suppression of disorderly houses, houses of ill fame, for the prevention and punishment of disorderly conduct and conduct liable to disturb the peace and tranquillity of any citizen or citizens thereof, and every other by-law, regulation, and ordinance that may seem to them proper for the security of the peace, health, order, and

good government of said city." We think that under the provisions of this section of the charter the City of Atlanta is authorized to establish and maintain a public hospital. The maintenance of such an institution may well be regarded as in a measure incidental and necessary to the security and preservation of the health and well-being of the citizens, who, in the hour of need, require the care and attention of such skilled nurses and physicians as may be selected and employed by the officials who are elected or appointed by the municipal authorities to conduct the hospital and render the services requisite and proper for such an institution. In the case of *Love* v. *City of Atlanta*, 95 *Ga.* 129 (22 S. E. 29, 51 Am. St. R. 64), it was said: "In the discharge of such duties as pertain to the health department of the State, the State is acting strictly in the discharge of one of the functions of government. If the State delegate to a municipal corporation, either by general law or by particular statute, this power, and impose upon it within its limits the duty of taking such steps and such measures as may be necessary to the preservation of the public health, the municipal corporation likewise, in the discharge of such duty, is in the exercise of a purely governmental function, affecting the welfare not only of the citizens resident within its corporation but of the citizens of the commonwealth generally, all of whom have an interest in the prevention of infectious or contagious diseases at any point within the State, and in the exercise of such powers is entitled to the same immunity against suit as the State itself enjoys. Such a duty will stand upon the same footing as its duty to preserve the public peace, and its liability or non-liability would depend upon the same principle which relieves the city from liability for the misfeasance of a police officer in the discharge of his duty. . . It can make no difference in principle as to the character of the agents employed in the discharge of this duty with respect to the public health. The principle of non-liability rests upon the broad ground that in the discharge of its purely governmental functions, a corporate body to which has been delegated a portion of the sovereign power, is not liable for torts committed in the discharge of such duties and in the execution of such powers. It can be no more liable because of the failure to select competent drivers of garbage carts than a city could be held liable for failing to elect a wise, conservative, and discreet mayor." We are of the opinion

that under the decision in the case just referred to, and the reasoning upon which the conclusion reached in that case is based, the operation of the ambulance is an incident to the maintenance and operation of the hospital itself and is consequently to be classed with those acts in the performance of which the municipal corporation is exercising a governmental function.

It is true that it is alleged in this petition that "in the maintenance of said Grady Hospital the City of Atlanta charged fees for patients entering therein;" but we can not construe this allegation to be an affirmative allegation that the city requires of all its patients payment for expense of board and treatment at the Grady Hospital, as would be the case of a private hospital maintained and operated for profit and the pecuniary advantage of those who own and operate it. Had the distinct allegation been that the hospital was established and operated for private gain and profit by the city, quite another case would have been made from that presented in this petition. If the pleader had wished to charge that the City of Atlanta maintained and operated the Grady Hospital for private gain and profit, and that to this end it charged fees of all its patients, it would have been very easy to have made that distinct averment. For the Grady Hospital to charge fees from some of its patients is not at all inconsistent with its character as a public institution and one operated by the municipal corporation in the performance of its governmental duties. Under the authority of the case of *Love* v. *City of Atlanta*, supra, the court below ruled rightly in sustaining the demurrer and dismissing the case. See, in this connection, 2 Dillon on Municipal Corporations, § 977, and cases cited, especially that of Maxmilian v. New York, 62 N. Y. 160 (20 Am. R. 468) ; Elliott on Mun. Corp. 327.

                    *Judgment affirmed. All the Justices concur.*