16002.  NABELL *v.* CITY OF ATLANTA *et al.*

16003.  NABELL, by next friend, *v.* CITY OF ATLANTA *et al.*

1. The Technological High School being operated by the City of Atlanta for the use of the public and the education of the public at large, "its operation is in virtue of the governmental powers of the municipality, and no municipal liability would attach to the nonperformance or improper performance of the duties of the officers, agents, or servants of the city in respect to" operating the school for use by members of the general public.

2. It would not affect the public character of the school that a purely incidental profit might result to the city from its operation.

3. The city's general demurrer to each petition was properly sustained.

DECIDED MARCH 3, 1925.

Action for damages; from city court of Atlanta—Judge Reid. September 27, 1924.

Harold E. Nabell, by next friend, brought suit against the City of Atlanta and R. S. Goulden for damages on account of personal injuries, and alleged: that petitioner was a resident of East Point, Ga., and attended the Technological High School of Atlanta, Ga.; that his father paid $100 per annum to the City of Atlanta for tuition fees in said school; that while a student at the school he was instructed by defendant Goulden, an instructor at the school, to do certain work which was a part of the curriculum of the manual-training course of the school, and which required the use of a rip-saw; that while using the rip-saw the petitioner sustained described injuries; that the defendants were negligent, in that they permitted petitioner, who was only 14 years of age, to use the said rip-saw "without the safety appliance being in place on said machine, and with the knowledge that said safety appliance had not been on said machine for a considerable length of time;" that the use of the rip-saw without the safety appliance was dangerous for

one as young as petitioner; that because of his tender age he did not realize the danger; that the defendant Goulden knew or ought to have known that the safety appliance had been removed from the machine; "and that the negligence of said Goulden was also the negligence of the City of Atlanta, as said Goulden was at the time acting as an agent of the City of Atlanta."

E. G. Nabell, the father of Harold Nabell, brought suit against the same defendants for damages on account of the same injury, and sought to recover for expenses incurred and lost services of his son.

Each defendant demurred generally and specially to each petition, and the general demurrers were sustained. The bill of exceptions in each case sets out that the court "passed an order sustaining *the general demurrer* filed by *the defendant* to plaintiff's petition and dismissing plaintiff's petition," and "to this ruling, sustaining *the general demurrer,* dismissing the petition," the plaintiffs excepted.

*Carllon W. Binns, Ralph H. Pharr, Dorsey, Shelton & Dorsey,* for plaintiff.

*James L. Mayson, Jesse M. Wood,* for defendants.

BLOODWORTH, J. (After stating the foregoing facts.)

1. The first question that presents itself for consideration is whether or not the city, in operating this pubilc school, was performing a governmental or a ministerial function; it being well settled that the city would not be liable in the performance of a governmental function. While the line of demarcation between these two functions is in some cases rather closely drawn, we think that in the instant case the city was engaged in the performance of a governmental function. The duty of educating its citizenry is one that devolves upon the State of Georgia as a sovereign power, and in the performance of this duty the State is discharging a function of government. If the State performs this function through one of its municipalities, and delegates to the municipality such power as may be necessary for the education of the public, "the municipal corporation likewise, in the discharge of such duty, is in the exercise of a purely governmental function, affecting the welfare not only of the citizens resident within its corporation but of the citizens of the commonwealth generally, all of whom have an interest" in the education and consequent edification of the

State's citizenry. This principle of law was held applicable to public health in the case of *Love* v. *City of Atlanta, 95 Ga.* 133 (22 S. E. 29, 51 Am. St. Rep. 64), and we think it is in principle equally applicable to public education. In the case of *Mayor &c. of Savannah* v. *Jordan, 142 Ga.* 409 (83 S. E. 109, Am. Cas. 1916C, 140), the Supreme Court, quoting approvingly from a Virginia case, said (p. 411) that a municipal corporation, "in its public character, acts as an agency of the State, to enable it the better to govern that portion of its people residing within the municipality; and to this end there is granted to or imposed upon it, by the charter of its creation, powers and duties to be exercised and performed exclusively for public governmental functions. These powers are legislative and discretionary, and the municipality is exempt from liability for an injury resulting from the failure to exercise them, or from their improper or negligent exercise. . . It seems to be well settled that where the municipality undertakes to perform for the State·duties which the State itself might perform, but which have been delegated to the municipality,—such, for instance, as devolve upon the board of health of a city under its charter, for the protection of life and health and comfort of the community,—and in the exercise of such function under the department a private citizen is injured by the negligence of the servants of the department while engaged in such work, no cause of action arises against such municipality." In *Rogers* v. *City of Atlanta, 143 Ga.* 153 (84 S. E. 555), the Supreme Court held that "even if the cutting of a hole" in a building through which plaintiff stepped and was injured, "and the leaving of it in an exposed condition, was negligence on the part of the firemen, the city was not liable in damages to a person injured in consequence of the negligence. A municipality is not liable for the acts of its servants and officers in the performance of public or governmental duties." See also cases there cited. The school in question being operated by a municipality "for the use of the public," the case comes under the principle of the decision in *Cornelisen* v. *City of Atlanta, 146 Ga.* 416 (91 S. E. 415); 19 *Ga. App.* 436 (91 S. E. 510), where it was held: "Where a city maintains a park primarily for the use of the public, intended as a place of resort for pleasure and promotion of health of the public at large, its operation is in virtue of the governmental powers of the municipality,

and no municipal liability would attach to the non-performance or improper performance of the duties of the officers, agents, or servants of the city in respect to keeping the park safe for use by members of the general public."

The majority of rulings in other States are in accord with the foregoing principles laid down by our courts. In Wixon *v.* Newport, 13 R. I. 454 (43 Am. Rep. 35), a minor, by next friend, brought suit for injury sustained in one of the public schools, and alleged, as in the instant case, that the apparatus which caused his injury "was without sufficient guarding and protection," and the Supreme Court of that State held "that the city was not liable for the injury suffered;" and cited in support of its decision several fire-department cases similar to the *Rogers* case, 143 *Ga.* 153, supra. In Bigelow *v.* Inhabitants of Randolph, 14 Gray 541 (Mass.), it was decided "that a town which had assumed the duties of school districts was not liable to a pupil attending school for injuries occasioned by a dangerous excavation negligently left in the school-yard." In Hill *v.* Boston, 122 Mass. 344 (23 Am. Rep. 332), it was held: "A child attending a public school in a schoolhouse provided by a city, under the duty imposed upon it by general laws, can not maintain an action against the city for an injury suffered by reason of the unsafe condition of a staircase in the schoolhouse, over which he is passing."

2. The next question involved is whether the charging of the tuition fee for a nonresident of the city would affect the public character of the school. In *Cornelisen* v. *City of Atlanta,* supra, it was held: "It would not affect the public character of the duties of the officers, agents, or servants of the city that a purely incidental profit might result to the city from its operation or management of the park." And in the opinion the court said: "If in other respects the park be for *public use* as indicated above, it would not change its character if the city licensed a third person to maintain bath-houses, spring-boards, and the like, in one of the lakes in the park at which bathers might be entertained and bathing-suits supplied upon the basis of a charge therefor." In *Watson* v. *City of Atlanta,* 136 *Ga.* 370 (71 S. E. 664), it was held that "a petition is demurrable where it is alleged that the plaintiff was injured in consequence of being struck by an ambulance which was negligently driven against him while he was in the exercise

of due care, it appearing from the remainder of the petition that the ambulance belonged to and was being operated for a public hospital of a municipal corporation, which was under the control of the municipality through its board of officers, although it is averred that in the maintenance of the hospital the municipality 'charged fees for patients entering therein,' this last averment not being tantamount to an allegation that the municipality maintained and operated the hospital for pecuniary gain and private profit." The petition in the instant case did not allege that the city operated the school "for pecuniary gain and private profit," or anything tantamount thereto, or that it was operated primarily for profit; and the mere incidental charge for nonresidents would not affect the public character of the school.

In the light of the foregoing decisions and the facts of the cases under consideration, it is held that, the Technological High School being operated by the City of Atlanta for the use of the public and the education of the public at large, "its operation is in virtue of the governmental powers of the municipality, and no municipal liability would attach to the nonperformance or improper performance of the duties of the officers, agents, or servants of the city in respect to" operating the school for use by members of the general public; and it would not affect the public character of the school that a purely incidental profit might result to the city from its operation.

3. Under these rulings the trial court properly sustained the general demurrer of the City of Atlanta to each petition.

*Judgment affirmed. Broyles, C. J., and Luke, J., concur.*