34692.   POLLOCK *v.* CITY OF ALBANY.

Decided September 18, 1953.

740

*Ray Y. Cross,* for plaintiff in error.

*Durden & Durden,* contra.

SUTTON, C.J. ▮ A demurrer to an original petition does not, without more, cover the petition after it has been amended in material respects; and it has been said that, if a demurrer is still relied upon, after an amendment to a pleading has been allowed, it should be renewed *or insisted upon* (*General Accident, Fire &c. Corp.* v. *Way,* 20 *Ga. App.* 106 (2), 92 S. E. 650; *Satlof* v. *State,* 52 *Ga. App.* 208, 182 S. E. 864), or "urged against the petition" after amendment thereto (*Mauldin* v. *Mauldin,* 25 *Ga. App.* 743 (3), 105 S. E. 252); and it has been ruled that, if the court permits an amendment to a petition after a demurrer thereto has been filed but before the demurrer has been ruled upon, the demurrer need not again be "formally presented" in order to except to the ruling on the demurrer (*Thornton & Warren* v. *Cordell,* 8

*Ga. App.* 588 (2), 70 S. E. 17). An oral motion to strike, in the nature of a general demurrer, may be made at any time before verdict. *Tyson* v. *Shoemaker,* 208 *Ga.* 28, 33 (65 S. E. 2d 163); *O'Hara* v. *Youmans,* 82 *Ga. App.* 164 (60 S. E. 2d 841); *Altman* v. *Moses,* 73 *Ga. App.* 505 (37 S. E. 2d 236); Code § 81-302. Therefore, the defendant's oral renewal of and insistence upon its demurrers as filed to the original petition, where the plaintiff amended his petition before the demurrers were ruled upon, was sufficient to renew the general grounds of demurrer so that they covered the petition as amended. The court ruled only upon the general grounds of the demurrer as thus renewed.

■ "Between a municipality and the public the question of liability depends on whether at the time of the injury sued for the municipality was engaged in governmental or ministerial duty." *Roberts* v. *Mayor &c. of Savannah,* 54 *Ga. App.* 375, 376 (188 S. E. 39). In determining whether the operation of a park, an auditorium, or a swimming pool, as a place of recreation or amusement, is in the performance of a municipality's ministerial or governmental functions, the following test has been consistently followed by the courts of this State: "If the park is primarily for the use of the public, intended as a place of resort for pleasure and promotion of health of the public at large, its operation is in virtue of the governmental powers of the municipality, and no municipal liability would attach to the nonperformance or improper performance of the duties of the officers, agents, or servants of the city in respect to keeping the park safe for use by members of the general public. [Citing.] But if the city, having charter authority, maintain the park primarily as a source of revenue, the duty of maintaining it in a safe condition for the use for which it is intended would be ministerial, and municipal liability would attach for breach of such duty." *Cornelisen* v. *City of Atlanta,* 146 *Ga.* 416, 419 (91 S. E. 415).

It is contended that the provisions of section 1 of the charter of the City of Albany (Ga. L. 1923, p. 370), providing the city with power to "rent or lease, and otherwise manage and dispose of all property," authorize the City of Albany to operate its stadium primarily for profit and for pecuniary gain. But under a charter amendment creating a Park Committee for the City of Atlanta and giving that committee power and "full authority

742

over all municipally owned parks, playgrounds, golf course and other amusement centers of Atlanta, and to make rules and regulations governing operation, regulation, and control of same," it was held that the City of Atlanta had no authority to maintain a swimming pool primarily as a commercial enterprise for the purpose of adding revenue to the city treasury. *Petty* v. *City of Atlanta,* 40 *Ga. App.* 63 (4) (148 S. E. 747). It was further held, in the fourth headnote of the *Petty* case: "If, as alleged in the petition, the municipal officers undertook to maintain the park and the swimming pool as a private commercial enterprise for the purpose of financial gain to the city, the endeavor was ultra vires and no liability would attach to the municipality from acts or omissions of the city's officers or employees in connection therewith. [Citing.]"

We note that section 34 (13) of the Albany charter (Ga. L. 1923, pp. 370, 414) gives that city power "To own, use and operate for municipal purposes and for profit a system of waterworks and electric lights and gas works," and that, by section 36 of its charter (Ga. L. 1923, pp. 370, 415), authority is given "to own and operate for reasonable profit a municipal abattoir." But the charter is silent as to the city's power to operate a stadium as a commercial venture, and such power cannot be implied from the general authority to manage the city's property. The allegations that the city has such power are not sustained by the provisions of the charter of the City of Albany, of which this court can take judicial notice. *Petty* v. *City of Atlanta,* 40 *Ga. App.* 63, supra.

It appears from the petition that the public attended the athletic events held in the stadium and paid taxes for the operation and maintenance of the stadium. This allegation tends to show that the stadium was not in fact operated as an independent commercial venture, but was owned by the city as a public recreational facility, and so was operated in the exercise of the city's governmental function of providing for the welfare of its citizens, notwithstanding the allegations of the petition to the contrary.

The petition failed to set out a cause of action, and the court did not err in sustaining the general demurrer thereto.

*Judgment affirmed. Felton and Worrill, JJ., concur.*