## 49044. SHELEY v. BOARD OF PUBLIC EDUCATION FOR THE CITY OF SAVANNAH AND THE COUNTY OF CHATHAM.

EBERHARDT, Presiding Judge.
Alice E. Sheley brought suit against the Board of

Education for the City of Savannah and County of Chatham seeking recovery of damages for the untimely death of her eight-year-old son, who was a regularly enrolled student at the Thunderbolt Elementary School, operated as a public school by the defendant board of education. She alleged that on March 7, 1973 the cover of the opening of a sanitary septic tank located on the grounds of the school and which served the sanitary system of the school, had been moved and the tank left open so that her child fell into the tank and drowned. She charged that the defendant maintained an attractive nuisance by this open tank and that it had been guilty of wilful and wanton negligence in doing so.

Defendant filed its motion to dismiss on the grounds that the petition failed to state a claim upon which relief could be granted, and that an action of this nature could not lawfully be maintained against the defendant board of education. It also filed its answer and defenses in which it averred that it was an independent school system, operating the public schools of Savannah and of Chatham County in conjunction with the State Board of Education under statutory and constitutional provisions and that it was entitled to governmental immunity from tort actions. It denied that the septic tank had been an attractive nuisance or that it had been guilty of any wilful or wanton negligence, and asserted affirmatively that the septic tank had been installed as a necessity for the operation of the school's sanitary system when the building was constructed and had been approved by the State Board of Education and its authority; that the opening above the ground was 18 x 18 inches and was kept covered by a sixty-pound cover which children generally were unable to move; that at some time during the night or early morning of March 7 vandals had removed the cover and when school employees discovered it to be missing, searched for it but could not find it, and called in to the maintenance office of the defendant and reported it after having placed a lighter cover over the opening to serve until the regular cover could be replaced by the maintenance people.

When plaintiff's child did not return home at the

expected time she came over to make inquiry about him, and a search was instituted for him. He was finally found in the septic tank, but the cover which school employees had placed on it that morning was still in place. Thus, defendant asserts that it was apparent that the child had not fallen into the tank, but that he had been placed there by some unknown force or party.

A hearing was held on the motion to dismiss. It was sustained on each ground, and plaintiff appeals. *Held:*

1. We affirm. The petition fails to state a claim on which relief can be granted for the reasons:

(a) The septic tank was not an attractive nuisance, which we have held to have no application to ponds, streams or other water hazards, whether natural or artificial. *Savannah F. & W. R. Co. v. Beavers,* 113 Ga. 398 (39 SE 82, 54 LRA 314); *St. Clair v. City of Macon,* 43 Ga. App. 598 (159 SE 758); *McCall v. McCallie,* 48 Ga. App. 99 (1) (171 SE 843); *Crawford v. Pollard,* 55 Ga. App. 702 (191 SE 162); *Fickling v. City Council of Augusta,* 110 Ga. App. 330, 332 (138 SE2d 437); *Montega Corp. v. Grooms,* 128 Ga. App. 333 (4) (196 SE2d 459).

(b) Allegations of wilful and wanton negligence on the part of the defendant school board do not deprive it of its right to plead and rely upon governmental immunity. *City of Savannah v. Jordan,* 142 Ga. 409 (83 SE 109); *Hale v. Davies,* 86 Ga. App. 126, 129 (70 SE2d 923); *Boone v. City of Columbus,* 87 Ga. App. 701 (75 SE2d 338); *Gray v. Mayor &c. of Griffin,* 111 Ga. 361 (36 SE 792); *Attaway v. Mayor &c. of Cartersville,* 68 Ga. 740, 741; *Moss v. City Council of Augusta,* 93 Ga. 797 (20 SE 653); *Brown v. City of Union Point,* 52 Ga. App. 212 (183 SE 78).

2. The defense of governmental immunity is good and demanded a judgment for the defendant. *Nabell v. City of Atlanta,* 33 Ga. App. 545 (126 SE 905); *Pollock v. City of Albany,* 88 Ga. App. 737 (77 SE2d 579); *Smith v. Board of Education of the City of Marietta,* 119 Ga. App. 441 (167 SE2d 615); cf. *City of Brunswick v. Barrett,* 58 Ga. App. 792 (199 SE 901); *Watson v. City of Atlanta,* 136 Ga. 370 (71 SE 664). We do not regard the facts of the situation as alleged here to be sufficient to bring it within

the category of a nuisance such as was dealt with in *Town of Ft. Oglethorpe v. Phillips,* 224 Ga. 834 (165 SE2d 141), because of differences in the facts appearing. First, it must be observed that the operation of a public school cannot be equated with the operation of a traffic control light. There are no such limitations upon the use of funds for operating street lighting and traffic control as there are concerning public school funds. See in this connection *Board of Education of Waycross v. Bates,* 114 Ga. App. 343 (151 SE2d 524). Moreover, it appears that the Town of Ft. Oglethorpe had known of the defective condition of the traffic signal light for more than two weeks, whereas here the removal of the septic tank cover was discovered on the morning of March 7, the day of the tragedy, and immediately reported to the maintenance office. During the two-week period the Town of Ft. Oglethorpe allowed the traffic light to operate in its defective condition. Here the tank was immediately covered with available material when the condition was discovered. The Town of Ft. Oglethorpe knew that six accidents had occurred, due to the condition of the traffic light, on the same day that plaintiff was injured. Here no other person was injured, or had ever been, due to the septic tank.

The situation here is, on principle, more like unto that in *Pollock v. City of Albany,* 88 Ga. App. 737, supra, where plaintiff was injured in the football stadium at a school football game. See also *Petty v. City of Atlanta,* 40 Ga. App. 63 (4) (148 SE 747).

3. Conceding, but not deciding, that the matters alleged and proved were enough to raise a factual issue as to whether a nuisance existed due to the removal of the cover to the septic tank, it would not affix any liability to the defendant school board, for its status is greatly different from that of a municipality. *Nabell v. City of Atlanta,* 33 Ga. App. 545, supra; *Board of Education of Waycross v. Bates,* 114 Ga. App. 343, supra. We have recognized this and both the Supreme Court and this court have declined to apply the doctrine of the *Town of Ft. Oglethorpe v. Phillips,* 224 Ga. 834, supra, in cases where tort liability was attempted to be fixed against governmental subdivisions other than municipalities. We

declined to do so in *State Highway Dept. v. Barrett,* 124 Ga. App. 703 (185 SE2d 624), holding that the status of the Highway Department relative to its right to assert governmental immunity to be like that of a county, and not like a municipality. We also declined to equate the Board of Regents of the University System with a municipality, and held it to be entitled to governmental immunity in *Perry v. Regents of the University System of Ga.,* 127 Ga. App. 42 (192 SE2d 518). The Supreme Court did likewise as to the State Parks Department in *Crowder v. Dept. of State Parks,* 228 Ga. 436 (185 SE2d 908). These cases have all been decided since that of *Town of Ft. Oglethorpe,* 224 Ga. 834, supra.

4. The Board of Education for the City of Savannah and the County of Chatham is an independent school system, charged by the statutes and constitutional provisions of this state with the duty of operating the public schools of that city and county. Neither the city nor the county controls the board; its members are elected by the people. It does have the right and power to request a levy, within statutory limits, of taxes county-wide for the raising of funds to operate the schools, and the county authority must levy it. See Ga. L. 1865-66, pp. 78-80; Ga. L. 1866, pp. 175-176; Ga. L. 1917, pp. 975-976; Ga. L. 1923, pp. 232-233; Ga. L. 1933, pp. 1067, 1069; Ga. L. 1937, p. 2094; Ga. L. 1941, pp. 33-34; Ga. L. 1951, pp. 2207-2210; Ga. L. 1961, p. 2519; Ga. L. 1965, p. 2221; Ga. L. 1968, pp. 2636-2648; Ga. L. 1970, pp. 2076-2080; Ga. L. 1972, p. 3843. Even if the school were operated by the city, that is a purely governmental function and governmental immunity from tort liability for injury inflicted in its operation would obtain. *Nabell v. City of Atlanta,* 33 Ga. App. 545, supra; *Board of Education of Waycross v. Bates,* 114 Ga. App. 343, supra.

A substantial portion, perhaps a substantial majority, of the funds provided to the board for operation of the schools come under the Minimum Foundation program through the State Board of Education, and its operations are a joint venture of and jointly financed by the local board and the State Board. It is required by law that the local board annually prepare a budget showing its estimate and source of receipts for the ensuing year

and *how they are to be spent.* All funds received, including those from local taxation and from the state, must be spent in strict accordance with the budget, and the budget is limited by the statutes and Constitution of this State to the inclusion of items for maintenance and operation of the schools. See Code Ann. §§ 32-606, 32-945; *Lewis v. Board of Education of Lowndes County,* 183 Ga. 687 (189 SE 233); *Board of Education of Waycross v. Bates,* 114 Ga. App. 343, supra.

It will be recalled that some of the school boards of this state sought to use local tax funds for the operation of a school lunch program, but the Supreme Court of this state held in *Wright v. Absalom,* 224 Ga. 6 (159 SE2d 413) that a school lunch program was not an educational purpose and hence the funds could not be so used under Art. VII, Sec. II, Par. I of the Constitution (Code Ann. § 2-5501). After that the Constitution was amended by vote of the people to include a lunch room program as an educational purpose. Ga. L. 1967, p. 940. But the Constitution still adheres to the strict requirement that all school funds be devoted to educational purposes as defined in the statutes and Constitution of this State. This constitutional proscription includes the defendant board. *Commissioners of Chatham County v. Savannah Electric & Power Co.,* 215 Ga. 636 (112 SE2d 655); *State Board of Education v. Board of Public Education for the City of Savannah and County of Chatham,* 190 Ga. 597 (10 SE2d 374); *State Board of Education v. County Board of Education of Richmond County,* 190 Ga. 588 (10 SE2d 369).

This means that the defendant board can not lawfully or constitutionally pay the plaintiff's claim, even should a judgment be obtained on it in this suit against the board. Neither the payment nor settlement of the claim is within the ambit of "educational purpose" for which alone the board may spend its funds. *Wright v. Absalom,* 224 Ga. 6, supra; *Board of Education of Waycross v. Bates,* 114 Ga. App. 343, supra.

5. A payment of plaintiff's claim, with or without a judgment against the defendant board, in settlement of a supposed tort liability of the board would be a gratuity which is forbidden. Constitution, Art. VII, Sec. I, Par. I

(Code Ann. § 2-5401).

6. Public property is not subject to levy and sale, and an execution on the judgment, even if obtainable on this claim, could not be levied on any property of the school board. *Fleishel v. Hightower,* 62 Ga. 324 (2); *Curry v. Mayor & Aldermen of Savannah,* 64 Ga. 290; *Neal-Millard Co. v. Trustees of Chatham Academy,* 121 Ga. 208 (48 SE 978); *Aetna Indem. Co. v. Town of Comer,* 136 Ga. 24 (2) (70 SE 676).

7. The funds of a school board are public property and not subject to process, *Dart v. Houston,* 22 Ga. 506, 532, 535, or to garnishment, *Fleishel v. Hightower,* 62 Ga. 324 (2), supra. Moreover, the remedy of mandamus could not avail because of the constitutional prohibition against payment of this kind of claim from school taxation. Code § 64-101; *Hannah v. Lovelace-Young Lbr. Co.,* 159 Ga. 856 (127 SE 225); *Wrightsville Consolidated School District v. Selig Co.,* 195 Ga. 408 (24 SE2d 306); *Brunson v. Caskie,* 127 Ga. 501 (56 SE 621, 9 LRA(NS) 1002). Where there is no lawful means for satisfying the claim by a political subdivision it is proper to dismiss the action against it.

Here again, the case of *Town of Ft. Oglethorpe v. Phillips,* 224 Ga. 834, supra, is distinguishable. The municipal corporation does have the power and authority to levy a tax for the payment of such a claim against the municipality and the judgment can be enforced by way of a mandamus proceeding. The school board can plead its governmental immunity, as it did here, and rely on it.

8. The situation here does not involve an injury inflicted by the negligent operation of a school bus. Even if it did, if there were no liability insurance the defendant board would be entitled to claim its governmental immunity, for the statute authorizing the school boards to procure insurance on the busses specifically provides that "nothing in this law (Code Ann. §§ 32-429 through 32-433) and Code Ann. § 56-2437 shall be construed as imposing legal liability upon such boards on account of such accident," and it is further provided that when liability insurance is procured as authorized the issuing company "shall be estopped to deny its liability

thereunder on account of the nonliability of said board." The General Assembly thus recognized the governmental immunity of a school board in a tort action and disclaimed any intent to change that. It provides for the bringing of a suit for injury so inflicted, but limits recovery to the amount of liability provided in the policy. There can be no recovery against the board beyond that even for a school bus accident, for it would, contrary to other statutory provisions and constitutional provisions, provide for a payment of school taxes for purposes other than educational. This was recognized in *Cotton States Mutual Ins. Co. v. Keefe,* 215 Ga. 830 (113 SE2d 774).

Nothing that we have been able to find, in the statutes or in the Constitution, or in the case law of this state justifies or permits the affixing of liability against a public board of education or permits it to make any lawful payment from its funds of a tort claim. On the other hand, we have specifically held that it cannot be done. *Board of Education of Waycross v. Bates,* 114 Ga. App. 343, supra.

The Supreme Court, in *Crowder v. Dept. of State Parks,* 228 Ga. 436, supra, adhering to the doctrine of governmental immunity, observed that "this doctrine has continued in force in this state since 1784. Whether it should now be abrogated is a matter of public policy which addresses itself to the legislative, not the judicial, branch of our state government." And we may observe that if the legislative branch should decide to abrogate it as to the public school system both statutory and constitutional changes would be necessary, for without change in the constitutional provisions which strictly limit the purposes for which the school funds may be spent, not even a judgment could lawfully be paid.

*Judgment affirmed. Bell, C. J., Pannell, P. J., Clark, Stolz and Webb, JJ., concur. Deen, Quillian and Evans, JJ., dissent.*

Argued February 6, 1974 — Decided June 19, 1974 — Rehearing denied July 10, 1974 — ■

*Falligant, Doremus & Karsman, Stanley Karsman,*

for appellant.
*Basil Morris,* for appellee.

Evans, Judge, dissenting.

On March 7, 1973, John J. Sheley, III, aged eight years, was in attendance as a pupil at the Thunderbolt Elementary School in Chatham County, Georgia. There was a septic tank located on the grounds of said school, from which the cover had been removed, and had been allowed to remain off for an undisclosed period of time. A considerable quantity of water was inside the septic tank, and the situation thus created was alleged to be an attractive nuisance to children of tender years. On the above date, John J. Sheley, III, fell into the septic tank and was drowned. Mrs. Alice E. Sheley, mother of the minor child, brought the present action against the Board of Public Education for the City of Savannah and County of Chatham, as defendant, praying a recovery for the wrongful homicide of her child; and alleging that death was proximately caused by negligence of defendant in negligently maintaining an attractive nuisance on the school grounds. Her complaint further alleged that defendant, through its agents, servants and employees, knew of the aforementioned dangerous condition and their failure to take any corrective action amounts to wilful and wanton negligence.

Defendant filed a motion to dismiss the complaint because of its failure to state a claim upon which relief can be granted, and because "an action of this nature cannot be legally maintained against defendant, a political subdivision under the laws of Georgia." The lower court sustained defendant's motion to dismiss, and the plaintiff appeals. The majority affirms on the theory that it was not an attractive nuisance and school funds could not be paid out for damages. I dissent.

1. It has been held many times that a parent may recover damages for death inflicted upon a minor child as a result of negligence in leaving unguarded an attractive nuisance. See *Ferguson v. Columbus & Rome R.,* 77 Ga. 102; *Mills v. Central of Ga. R. Co.,* 140 Ga. 181 (78 SE 816); *Wallace v. Matthewson,* 143 Ga. 236 (84 SE 450); *Atlantic C. L. R. Co. v. O'Neal,* 180 Ga. 153 (178

SE 451).

2. It has been held that a school board is such an entity that may sue and be sued. *Roberts v. Baker,* 57 Ga. App. 733 (196 SE 104).

3. That brings us face-to-face with the real issue here, which is as to whether a school board may be sued in tort because of the death of a child of tender years, occurring as a result of negligence in maintaining an "attractive nuisance." In *Hale v. Davies,* 86 Ga. App. 126 (70 SE2d 923), a suit by a high school football player, because of injuries received while playing football, was brought to this court. This court held, among other things, that the young man assumed the risk of being injured by electing to engage in this sport; further that the physical education and training of school children is a governmental function and that "authorities in charge of public schools enjoy immunity from tort liability for personal injuries or death sustained by pupils or other persons in connection therewith, in the absence of a legislative enactment to the contrary, *at least where only negligence was involved.* "(Emphasis supplied.) We pause here to point out that in the case now under consideration the complaint alleged *wilful and wanton negligence,* in that the servants and agents of defendant knew of the dangerous condition and failed to take corrective action. This allegation therefore differentiates the two cases considerably. And one final recital in the *Hale* case, supra, is most important, to wit: "It is conceded by the plaintiff that he could not have maintained an action against the school as such." No such concession as that is made in the present case, and indeed, this allegation was enough to warrant dismissal of the *Hale* case, without regard to any other factor that may have militated against the plaintiff therein.

We recognize generally that in many states the doctrine of governmental immunity is undergoing a change, and that governments and governmental entities are not being allowed to plead governmental immunity and thereby escape liability for injury or death to members of the public as formerly.

For authorities from other jurisdictions holding school boards are not entitled to escape liability for torts

under governmental immunity theory, see 33 ALR3d 703; 57 AmJur2d 51, Municipal, School and State Tort Liability § 38 et seq.; 47 AmJur. 334 et seq., Schools, §§ 56-59; Arizona—Morris v. Ortiz, 103 Ariz. 119 (437 P2d 652) (1968); Vreeland v. State Board of Regents, 9 Ariz. 61 (449 P2d 78) (1969); Illinois—Molitor v. Kaneland Community Unit Dist., 18 Ill2d 11 (163 NE2d 89, 86 ALR2d 469), cert. den. 362 U. S. 968 (80 SC 955, 4 LE2d 900) (1959); Bergman v. Board of Education, 30 Ill. App. 2d 65 (173 NE2d 565) (1961); Ludwig v. Board of Education, 35 Ill. App. 2d 401 (183 NE2d 32) (1962); Minnesota—Spanel v. Mounds View School Dist., 264 Minn. 279 (118 NW2d 795) (1962); Nebraska—Johnson v. Municipal University of Omaha, 184 Neb. 512 (169 NW2d 286); Nevada—Walsh v. Clark County School Dist., 82 Nev. 414 (419 P2d 774) (1966); New Jersey—Jackson v. Hankinson, 51 N. J. 230 (238 A2d 685) (1968).

But of greater concern to us, of course, is the situation as it obtains in Georgia. In 1968 the case of *Phillips v. Town of Fort Oglethorpe,* 118 Ga. App. 62 (162 SE2d 771), came to this court for decision. Plaintiff had sued the owner and driver of an automobile, and the Town of Fort Oglethorpe, as joint defendants, because of personal injuries received in an automobile collision at an intersection, it being alleged that a traffic light was showing green in all four directions at the same time, as a result of a malfunction, and had caused six collisions on the same day. The trial court sustained the general demurrer filed by the municipality and dismissed the suit. This court reversed, in a five to four decision, holding that the Town of Fort Oglethorpe was under a duty, imposed by Code § 69-303, to keep the streets in a reasonably safe condition; that such was a ministerial or corporate function and a violation of which, resulting in injury to plaintiff, was actionable. Certiorari was granted and the case was decided by the Supreme Court of Georgia, *Town of Fort Oglethorpe v. Phillips,* 224 Ga. 834 (165 SE2d 141). In a full-bench decision, the Court of Appeals was affirmed, but upon a different theory than was given by our court. Instead of placing its decision upon the failure to properly keep its streets in safe condition, as required by Code § 69-303, the Supreme

Court, in a very comprehensive decision, held first that the Town of Fort Oglethorpe was engaged in a governmental function in operation and maintenance of the traffic light and was not liable for negligent performance thereof, and same is not such a case as is contemplated by Code § 69-303. But then the Supreme Court went on to hold that plaintiff's alleged facts were sufficient to state a cause of action *based on nuisance* against the municipality's general demurrer; and that a municipality, like any other individual or private corporation, may be liable for damages caused to a third party from operation or maintenance of a nuisance, irrespective of whether it is exercising a governmental or ministerial function; and that a municipality cannot, under the guise of performing a governmental function, create a nuisance dangerous to life or health. The decision ends with this pertinent language: "Accordingly, the particular allegations of the instant petition set forth a cause of action for the operation and maintenance of a nuisance."

If a municipality cannot plead governmental immunity against the maintenance of a nuisance, neither can a school board. We are bound by the decisions of the Supreme Court of Georgia. See: *Cargile v. State,* 194 Ga. 20 (1) (20 SE2d 416). To say that the school board cannot be sued simply because the tax money provided for its maintenance can be used only for schools and for no other purpose than for schools is simply another way of hiding behind governmental immunity which is no longer controlling in nuisance cases as so stated by the Supreme Court.

I am authorized to state that Judges Deen and Quillian concur in this dissent.