## WARE COUNTY v. NATIONAL SURETY CO.

(District Court, S. D. Georgia. January 18, 1927.)

**1. Courts ⬡367(2)—Federal court is not bound by state decision, construing statute, after rights had accrued, but before commencement of federal suit to enforce them.**

Where contract rights accrued under a state statute, a federal court is not bound by a decision of the Supreme Court of the state, construing such statute, rendered after the rights had accrued, but before the suit in the federal court to enforce such rights was commenced.

**2. Courts ⬡365(7)—Federal court not governed by state decision in construction of contract.**

In general, construction of a contract to determine whether it conforms to the provisions of a state statute is a question of general law, in which a federal court should form an independent judgment.

**3. Principal and surety ⬡82(1)—Bonds given by contractors for public work are to be liberally construed for protection of furnishers of labor and material.**

The primary purpose of statutes requiring bonds from contractors for work is the protection of those furnishing labor and material and such statutes and bonds given under them are to be liberally construed to that end.

**4. Bridges ⬡20(1)—Bond given by bridge contractor held good as statutory bond (Park's Ann. Code Supp. Ga. 1922, § 389 et seq.).**

A bond given by a contractor with a county for building of a bridge held good as a statutory bond under Park's Ann. Code Supp. Ga. 1922, § 389 et seq., and to obligate the surety for payment of claims of furnishers of labor and materials for the work.

At Law. Action by Ware County, Ga., for the use of the Georgia Creosoting Company, against the National Surety Company. On demurrer to petition. Overruled.

R. D. Meader, of Brunswick, Ga., and Adams & Adams, of Savannah, Ga., for plaintiff.

Hitch, Denmark & Lovett, of Savannah, Ga., for defendant.

BARRETT, District Judge. The county of Ware, on October 10, 1925, brought suit in the city court of Savannah, for the use of Georgia Creosoting Company, against the National Surety Company, alleging, in substance, the following: On August 16, 1922, K. Goff entered into a contract with Ware county to construct a bridge, and executed to it as obligee a bond with the National Surety Company as surety, conditioned as follows:

"Now therefore, the condition of this obligation is such that, if the bounden 'principal' shall in all respects comply with the terms and conditions of said contract, and his obligations thereunder, including the 'notice to contractors,' general conditions, specifications, special provisions, and proposals, therein referred to and made part thereof, and shall indemnify and save harmless the said county of Ware against or from all costs, expenses, damages, injury, or loss to which the said county may be subjected, by reason of any wrongdoing, misconduct, want of care or skill, negligence, or default upon the part of the said principal, his agents or employees, in or about the execution or performance of said contract, including said notice to contractors, general conditions, specifications, special provisions, and proposals, and such alterations as may be made in said specifications as therein provided for, and shall save and keep harmless the said county against and from all loss to it, from any cause whatever, including patent infringements, and from all costs and charges that may accrue on account of the doing of the work specified and for the payments as they become due of all just claims for work, tools, machinery, labor and materials furnished by persons under or for the purpose of such contract, and shall comply with all laws pertaining thereto. * * * *"

Georgia Creosoting Company furnished to Goff material which was used in such work; the date of the last item furnished being June 22, 1923, for which there is a balance owing of $3,368.80 principal. The bridge was completed October 11, 1924, and accepted more than three months before the filing of this petition.

Defendant filed a general demurrer to the petition, and that is now for consideration.

On December 11, 1923, the Supreme Court of Georgia, in the case of American Surety Co. v. Small Quarries Co., 157 Ga. 33, 120 S. E. 617, decided that a bond, in substance identical with the one under consideration, was not a statutory bond in compliance with the laws of Georgia of 1916, as appearing in sections 389 and 389 (c), 389 (d), 389 (e), 389 (f), and 389 (g), of 8 Supp. to Park's Code of Georgia, Justice Hines dissenting, which decision has not been reversed or modified. The sole reason for such conclusion was because there did not follow the name of the obligee the words "for the use of the obligee and of all persons doing work or furnishing skill, tools, machinery, or materials under or for the purpose of such contract," which words are in the said statute.

[1] 1. Is this court conclusively bound by the decision of the Supreme Court of Georgia in the above case of American Surety Company v. Small Quarries Company?

This is not a case of the construction of a statute, but the construction of a contract. There is no question raised as to what is the meaning of the statute or as to its constitutionality, but does the bond as executed bring it within the terms of the statute? " * * * When contracts and transactions have been entered into, and rights have accrued thereon under a particular state of the decisions, or when there has been no decision, of the state tribunals, the federal courts properly claim the right to adopt their own interpretation of the law applicable to the case, although a different interpretation may be adopted by the state courts after such rights have accrued." Mr. Justice Bradley in Burgess v. Seligman, 107 U. S. on pages 33, 34, 2 S. Ct. 21 (27 L. Ed. 359).

Even in the matter of construing statutes the federal courts are not bound to follow the state courts, where the rights have accrued before the decisions of the state courts, even though the state court decision shall have been rendered before the suit in the federal court shall have commenced. "Without qualifying the principles that, in all cases, it is the duty of the federal court to lean to an agreement with the state court, where the issue relates to matters depending upon the construction of the Constitution or laws of the state, and that the federal court is bound to accept decisions of the state courts construing state statutes rendered prior to the making of the contract on which the cause of action is based, such duty does not exist in regard to decisions of the state court rendered after the cause of action has arisen, although before the action itself was commenced, when the federal court in the exercise of its independent judgment reaches a different conclusion from the state court." Great Southern, etc., Co. v. Jones (2d. headnote) 193 U. S. 532, 24 S. Ct. 576, 48 L. Ed. 778. In this case all the material for which payment is sought was furnished prior to the decision of the State court.

Judge Lurton, while Circuit Judge of the Sixth Circuit, in the case of Louisville Trust Co. v. City of Cincinnati (C. C. A.) 76 F. 296, strongly stated the reason for the independence of the judgment of the federal courts in a case similar to this. In that case it was contended that the decision of the state court was "a conclusive interpretation of the scope, effect, and duration of the various contracts or ordinances under which the mortgaged easements and franchises originated," and Judge Lurton said, as shown on page 300:

"If this be true, the constitutional right of the complainant, as a citizen of a state other than Ohio, to have its rights as a mortgagee defined and adjudged by a court of the United States is of no real value. If this court cannot for itself examine these street contracts, and determine their validity, effect, and duration, and must follow the interpretation and construction placed on them by another court in a suit begun after its rights as mortgagee had accrued, and to which it was not a party, then the right of such a mortgagee to have a hearing before judgment and a trial before execution is a matter of form without substance."

[2] The determination of whether or not a contract is made in conformity with the provisions of a state statute is in my opinion a question of general jurisprudence, unless, forsooth, it be in a matter of land titles or other local matter, and there be some technical controlling feature as interpreted by the state courts. On such questions it is universally recognized that the federal courts should exercise independent judgment.

Had the decision of the state court been just the opposite of what it is, and the surety company, a nonresident corporation, had desired a decision by the United States court as to whether the contract as represented in the bond into which it had entered was a statutory bond, or a mere common-law bond,— can it be doubted that this court would be required to exercise an independent judgment on that issue?

For satisfying discussions of this question see Burgess v. Seligman, 107 U. S. 20, 2 S. Ct. 10, 27 L. Ed. 359; Great Southern, etc., Co. v. Jones, 193 U. S. 532, 24 S. Ct. 576, 48 L. Ed. 778, and Louisville Trust Co. v. City of Cincinnati (C. C. A.) 76 F. 296.

In answer to the suggestion that the true rule as applicable to this case is contained in Warburton v. White, 176 U. S., beginning at page 484, and especially as contained in the opinion on page 496, 20 S. Ct. 404, 44 L. Ed. 555, it is sufficient to note that the first sentence in the statement of facts is: "This case involves the title to a lot of land in the city of Tacoma, in the state of Washington."

The conclusion of this court is that it is not only its right, but its duty, to exercise an independent judgment in determining the issue raised by the demurrer.

[3, 4] 2. It is the opinion of this court that the bond involved is a statutory bond. It is probably useless to undertake to strengthen the argument briefly but cogently stated by Justice Hines in his dissenting opinion. I venture, however, these additional comments:

The real reason, so far as I am advised, for the enactment of the law requiring a bond

of this character was to assure the payment in full of those who furnished labor or material. In the absence of some such protective provision, this result was frequently not attained. There could be no liens placed on the public property of the state, county, municipality, or other public board or body, as the case may be. Neal-Millard Co. v. Trustees Chatham Academy, 121 Ga. 208, 48 S. E. 978; Ætna Indemnity Co. v. Town of Comer, 136 Ga. 24, 70 S. E. 676. The bond usually taken before the enactment of this law was merely to hold the state, county, municipality, or public board or body free from loss or damage. This did not serve to protect the laborers and the materialmen. The important part of the act of 1916, as affecting materialmen and laborers, is contained in the following language in section 389(c) setting forth the condition of the bond: " * * * For the payments as they become due of all just claims for work, tools, machinery, skill and materials furnished by persons under, or for the purpose of, such contract. * * * "

The bond in this case contained the following condition: " * * * For the payments as they become due of all just claims for work, tools, machinery, labor and materials furnished by persons under or for the purpose of this contract. * * * "

If it was not the intention of both the obligor and the obligee that this should be a compliance with the statute, why was this language used—language that was not needed to protect the obligee if the statute under consideration was not being applied?

Further, it must not be lost to mind that, if the county failed to take a bond in compliance with the statute, it created against itself a liability not hitherto existing, for by section 389(d) it is provided: " * * * If such bond, * * * be not taken in manner and form as herein required, the corporation or body for which work is done under the contract, shall be liable to all persons furnishing labor, skill, tools, machinery or materials to the contractor thereunder, for any loss resulting to them from such failure."

It cannot be doubted that the county thought it was taking the statutory bond, and I think that it cannot be doubted that the surety company knew that the county so thought. Under such conditions the surety company should not be heard to now place or seek to place a different interpretation upon the bond.

The Supreme Court of the United States has decided that in cases of this kind the rule of strictissimi juris should not apply. "The

rule of strictissimi juris is a stringent one, and is liable at times to work a practical injustice. It is one which ought not to be extended to contracts not within the reason of the rule, particularly when the bond is underwritten by a corporation, which has undertaken for a profit to insure the obligee against a failure of performance on the part of the principal obligor. Such a contract should be interpreted liberally in favor of the subcontractor, with a view of furthering the beneficent object of the statute." Guaranty Company v. Pressed Brick Company, 191 U. S. 416, 426, 24 S. Ct. 142, 144 (48 L. Ed. 242). "The courts of this country have generally given to statutes intending to secure to those furnishing labor and supplies for the construction of buildings a liberal interpretation, with a view of effecting their purpose to require payment to those who have contributed by their labor or material to the erection of buildings to be owned and enjoyed by those who profit by the contribution of such labor or materials." United States v. American Surety Company, 200 U. S. 197, 202, 203, 26 S. Ct. 168, 170 (50 L. Ed. 437). "The Act of August 13, 1894, c. 280, 28 Stat. 278, and the bonds given under it, must be construed liberally for the protection of those who furnish labor or materials in the prosecution of public work." Brogan v. National Surety Company (1st. headnote), 246 U. S. 257, 38 S. Ct. 250, 62 L. Ed. 703, L. R. A. 1918D, 776.

It will be noted that the statute under consideration in the foregoing cases was of substantially the same import as the Georgia statute, and the reason recognized for the enactment of such statute was the protection of those who furnished labor and material.

Following the conclusion indicated above, the demurrer is overruled.