## CITY COUNCIL OF AUGUSTA *v.* CLEVELAND.

1. The duty of a city to maintain its sewerage-drainage system in a good working and sanitary condition is a governmental function.
2. Such maintenance of a sewerage system has reference to the preservation of the public health.
3. This court will take judicial notice of that fact.
4. This court will also take judicial cognizance of the fact that the cleaning out of an essential part of a city's sewerage-drainage system for the purpose of keeping it open and unclogged by dirt, sand, or other foreign substances, so that it can properly perform its functions as a part of the system, is a necessary work in a proper maintenance of the system, and is a work connected with the preservation of the public health.
5. Negligence on the part of employees of the board of health of a city, who were paid by the city, in cleaning out a part of the sewer and leaving a heavy iron lid to an opening into the sewer in such a position as to create a dangerous defect or obstruction in the sidewalk, in consequence of which one not chargeable with negligence was injured, would render the city liable to the injured party.

No. 852.    FEBRUARY 13, 1919.

Questions certified by Court of Appeals (Case No. 8996).

*Isaac S. Peebles, Jr.,* for plaintiff in error.

*Alexander & Lee,* contra.

BECK, P. J. The Court of Appeals has certified the following questions upon which it desires instruction:

"1. Is the duty of a city to maintain its sewerage-drainage system in a good working and sanitary condition, so as to prevent it from becoming or causing a nuisance, a governmental or a ministerial function?

" (*a*) Is such maintenance connected with or has it reference to the preservation of the public health?

" (*b*) Is the fact that such maintenance is connected with or has reference to the preservation of the public health so well known that this court can take judicial cognizance of it?

" (*c*) Can this court take judicial cognizance of the well-known fact that the cleaning out of a 'sand-trap'—an essential part of a city's sewerage-drainage system—for the purpose of keeping it open and unclogged by dirt, sand, or other foreign substances, so that it can properly perform its functions as a part of the system, is a necessary work in the proper maintenance of the system, and is a work connected with the preservation of the public health?

"2. A 'sand-trap' forming a part of the sewerage-drainage system of the City of Augusta was being cleaned out by the

employees of the board of health of the city by removing therefrom sand and dirt? The powers and duties of the board of health and its employees, and their relations to the city, are fixed by the act of the General Assembly of Georgia creating the board (Acts 1880-1, p. 365). While the men cleaning out this sand-trap were employees of the board of health of the City of Augusta, it is inferable from the evidence that they were paid by the City of Augusta. The sand-trap was on the edge of a sidewalk near the curbing, and the employees of the board of health, for the purpose of cleaning out the sand-trap, removed its iron lid (which was about 3½ or 4 feet square and weighed 200 or 250 pounds, and which, when the trap was closed, formed a part of the surface of the sidewalk used by pedestrians), and propped the lid up at an angle on the edge of the sidewalk by means of a steel bar some 2½ or 3 feet long, while they were engaged in cleaning out the trap. While this work was being done, a boy 7 years old, who was upon the sidewalk, walked up to the trap to see what was going on, and accidentally struck with his foot the steel bar which supported the lid, thereby knocking the prop down and causing the lid to fall upon and break his leg. Under these circumstances, was the city in the performance of a governmental or a ministerial function; and was it liable for the negligence of the employees of the board of health (if they were negligent under the facts of the case) in improperly and insecurely propping up the lid, and in failing to warn the boy of his danger when approaching it?"

1-3. We are of the opinion that the duty of a city to maintain its sewerage-drainage system in a good working and sanitary condition is a governmental function. That such maintenance is connected with and has reference to the preservation of the public health is so well known and so generally recognized that courts will take judicial cognizance thereof. It is unnecessary to cite authorities, either decisions of courts or text-books, to show what facts or classes of facts courts will take judicial notice of, in order to demonstrate that judicial notice will be taken of the fact that the sewerage system has a direct connection with and relation to the health of the inhabitants of the municipality. We will, however, call attention to the case of *Townsend* v. *Smith*, 144 Ga. 792 (87 S. E. 1039), in which it appears that this court took judicial cognizance of the fact that "the prevention of an infectious malady

which, unless checked, would become general among the cattle of a given county and thereby render the flesh of such cattle and the milk of cows diseased, unwholesome, and unfit for food, was a matter affecting the health of the people of the community where this disease appeared." The removal of garbage of all kinds, the prevention of the escape of noxious vapors and odors, the cleanliness of the persons residing in a city, are all to a large extent dependent upon the maintenance of a sewerage-drainage system. It follows from what is here said, under the authority of several of our decisions, that the maintenance of the sewerage and drainage system of a city in a good working and sanitary condition is a governmental function. This conclusion is in accordance with what was said in the case of *Love v. Atlanta,* 95 *Ga.* 129 (22 S. E. 29, 51 Am. St. R. 64), and the other cases decided by this court. *Watson* v. *Atlanta,* 136 *Ga.* 370 (71 S. E. 664). See also 6 McQuillin Mun. Corp. § 2669. In answering the questions in regard to the sewers and drainage system of a city, we have assumed that the system referred to is not one operated for profit, and that no substantial charges are made for the ordinary use, enjoyment, and benefits of the system.

4. It will be seen from what we have said above that an affirmative answer should be given to subdivision (c) of the first question, in the form in which that question is submitted. If the question had been propounded as to whether a court would take judicial cognizance of what a sand-trap is, a different question would have been presented. But where the sand-trap is defined as an essential part of the sewerage system, then it follows from what we have previously stated that the keeping of it open and unclogged by dirt, sand, or other foreign substance, so that it could properly perform its functions as a part of the system, is a necessary part of the proper maintenance of the system, and has, therefore, a natural connection with the preservation of the public health.

5. While it is one of the governmental functions and duties of a city to effectively maintain its sewerage system, and while, under the authority of the decision in *Love* v. *Atlanta,* supra, and the cases laying down the same doctrine as there stated, it follows that if, in the exercise of such functions and the discharge of the duties devolving upon the department of the city government having charge of the matters relating to the public health, a private citizen

is injured by the negligence of one of the city's servants in and about such work, no right of action arises against the city, nevertheless that doctrine must not be allowed to destroy the other equally well-established doctrine, that if a city negligently and tortiously allows obstructions to remain in its streets or sidewalks, or negligently fails to repair defects in a sidewalk or street, and a citizen in the exercise of due care is injured in consequence of such act of negligence upon the part of the city, there can be a recovery therefor against the city. Each of these two doctrines must be given effect, and has been given effect. In the case of *Mayor etc. of Savannah* v. *Waldner,* 49 *Ga.* 316, it was said: "It is the duty of a municipal corporation, vested by law with authority over the streets, whilst dangerous works, such as sewers, etc., are being constructed across a street, to have proper precautionary measures taken to prevent accidents to passengers during such construction, whether the same is being done by the corporation through its own servants, or by contract, or by subcontractors under a primary contractor." The defect in the street which was charged to be negligent and tortious conduct in the case just cited consisted in leaving open "a ditch or sewer across the street." See also *Mayor etc. of Savannah* v. *Spears,* 66 *Ga.* 304. In the case of *Kea* v. *Dublin,* 145 *Ga.* 511 (89 S. E. 484), it was said: "Although municipal authorities may have plenary power in the matter of collection, removal, and disposition of garbage, yet they can not lawfully create, in connection therewith, a nuisance dangerous to health or life; and where such a nuisance is created and its effect is specially injurious to an individual by reason of its proximity to his home, he has a cause of action for damages. *Bell* v. *Mayor etc. of Savannah,* 139 *Ga.* 298 (77 S. E. 165)." See also *Mayor etc. of Waycross* v. *Houk,* 113 *Ga.* 963 (39 S. E. 577); *Williams* v. *Washington,* 142 *Ga.* 281 (82 S. E. 656, L. R. A. 1915A, 325, Ann. Cas. 1915B, 196); *Langley* v. *Augusta,* 118 *Ga.* 590 (45 S. E. 486, 98 Am. St. R. 133); *Mayor etc. of Americus* v. *Chapman,* 94 *Ga.* 711 (20 S. E. 3); *Cornelisen* v. *Atlanta,* 146 *Ga.* 416 (91 S. E. 415). Consequently the last question propounded by the Court of Appeals should be answered in the affirmative.

*All the Justices concur.*