### MAYOR AND ALDERMEN OF SAVANNAH *v.* JONES.

1. The maintenance, by a municipality, of a large waste-paper wooden box as a receptacle for trash and waste-paper, and the removal of the contents thereof by the employees of the municipality, is a duty connected with the preservation of the public health.

2. The maintenance of such a box as just described and the removal of its contents is an act by a municipality in the performance of its governmental functions.

3. The courts will take judicial cognizance of the fact that the mainten-ance by a municipality of such a box and the removal of its contents is a duty connected with the preservation of the public health, and is a part of the governmental functions of the municipality.

4. Under the facts alleged in paragraphs 6 and 7 of the petition, the municipality was in the performance of a *governmental function* in main-taining and emptying the box above described, but the municipality was also under *ministerial* duty to keep its streets and sidewalks free from obstructions such as alleged. Consequently, under the facts alleged in the petition, *at the time of the injury* the exercise of the governmental function of emptying the box had ceased, and the ministerial duty of keeping the streets and sidewalks free from obstructions was obligatory, and the municipality would be liable in damages for negligence of its employees when the top or cover of the box was "left open" so as to project it over the sidewalk and injure the plaintiff in the manner alleged.

No. 1164.  May 15, 1919.

Questions certified by Court of Appeals (Case No. 9391).

*R. J. Travis* and *D. S. Atkinson,* for plaintiff in error.

*W. R. Hewlett* and *N. J. Norman,* contra.

Hill, J.  The Court of Appeals has certified the following to this court, for instruction:

"Henry B. Jones brought suit against the Mayor and Alder-men of the City of Savannah, and in part alleged as follows: ' 3.  That what is known as and commonly called the City Market sits in the intersection of the Barnard and St. Julian streets, in the City of Savannah, said Chatham County, Georgia, and on the east side of said market, facing St. Julian street, and running north and south on the outer edge of the sidewalk is a railing some ten or twelve feet long, or thereabout, and about four or five and one half feet high.  4.  That on Wednesday, June 20, 1917, in the afternoon of said day, there was a large trash or waste-paper wooden box sitting on the eastern side of said railing, nearer the northern end of said railing, and that the cover of said box was thrown open, backward, over the said railing, toward the market wall, and extending over the sidewalk from the railing about one foot or one foot and a half.  5.  That said box is, and was at the time herein mentioned, maintained by said defendant as a receptacle for trash and waste paper, and the contents thereof is taken out and carried away by the employees of said defendant.  6.  That on said June 20, 1917, the contents of said box was taken out by said employees, and the top or cover left open, in the manner above set

forth, by the party emptying said box; and petitioner is informed and believes that the name of the driver of the wagon hauling off said contents was Prince Austin, wagon No. 19, of said defendant. 7. Petitioner further shows that on the afternoon of said day, while walking along said sidewalk on said eastern side of said market, going south, within the public thoroughfare, passing said box, the end of the cover which was projecting over said railing out into the sidewalk, said cover not being seen by said petitioner, struck petitioner in the left eye, injuring and damaging the same so seriously that petitioner has completely lost the sight thereof.'

"1. Is the maintenance by the city of such a trash or waste-paper box as is described, and the removal of the contents therefrom by the employees of said city, connected with the preservation of the public health?

"2. Is the maintenance of such a box, and the removal of the contents thereof, an act of the city in the performance of its public duties or governmental functions?.

"3. Can the courts take judicial cognizance of the fact that the maintenance by the city of such a box and the removal of its contents is connected with the preservation of the public health and a part of the governmental functions of the city?

"4. Under the circumstances alleged in paragraphs 6 and 7 of the petition, as above set out, was the city in performance of a governmental or a ministerial function; and is it liable for the negligence of its employees (if they were negligent under the facts of the case) when the top or cover of the box was 'left open' as above?"

1. A municipal corporation in the exercise of its corporate functions performs two classes of service: (1) governmental duties, and (2) private corporate, or ministerial, duties. It seems well settled in this State that in the negligent performance of its governmental duties a municipal corporation is not liable in damages to one who is injured while the municipality is engaged in the performance of such duties. *Wright* v. *Augusta,* 78 *Ga.* 241 (6 Am. St. R. 256); *Love* v. *Atlanta,* 95 *Ga.* 129 (22 S. E. 29, 51 Am. St. R. 64); *Watson* v. *Atlanta,* 136 *Ga.* 370 (71 S. E. 664); *Mayor &c. of Savannah* v. *Jordan,* 142 *Ga.* 409 (83 S. E. 109, L. R. A. 1915C, 741, note, Ann. Cas. 1916C, 240); *Cornelisen* v. *Atlanta,* 146 *Ga.* 416 (91 S. E. 415). And this seems to be the

rule in most jurisdictions. 19 R. C. L. 406. But a different rule obtains where, in the exercise, or neglect, of its ministerial duties, one is negligently injured by a municipal corporation. *Mayor &c. of Savannah v. Spears,* 66 *Ga.* 304; *Smith* v. *Atlanta,* 75 *Ga.* 110; *City of Greensboro* v. *McGibbony,* 93 *Ga.* 672 (20 S. E. 37).

Municipal corporations are civilly liable in damages arising "for neglect to perform, or for improper or unskillful performance, of their ministerial duties." Civil Code (1910), § 897. The question of liability of the municipality, as between the latter and the public, depends upon whether *at the time of the injury* the municipality is engaged in a governmental or ministerial duty. If it is engaged, *at the time of the injury,* in a governmental function, the municipality is not liable for damages caused by the *negligence* of the persons employed thereby. There is no conflict between the two rules as defined above. The only trouble is in the application of the one or the other rule to given facts, to determine where the one leaves off and the other begins. This is often difficult. How stands the present case in this respect? On June 20, 1917, the contents of the trash and waste-paper box were taken out, and the cover of the box was thrown open over the railing of the sidewalk and extended over the sidewalk about a foot and a half, and was left in that condition; and on the afternoon of the same day, while the plaintiff was walking along the sidewalk and not seeing the cover of the box, it "struck petitioner in the left eye," as a result of which plaintiff's eye was so seriously damaged that he lost the sight thereof. In these circumstances it cannot be said that *at the time of the injury* the municipality was *engaged* in a governmental duty. That duty had been performed and had ceased for the time being, at least; and the ministerial duty of keeping the streets clear of dangerous obstructions had already begun in contemplation of law. If the city caused the situation of peril, even in the discharge of a governmental function, and left the sidewalk in a dangerous condition, and the plaintiff put himself in a position of danger, it is a question for the jury whether, under all the evidence, he acted with ordinary care and prudence, and what was the proximate cause of the injury. If the rule were otherwise than as above stated, the governmental duty might be begun but never ended, and, regardless of negligence relative to the ministerial duty in keeping the streets and sidewalks free from obstructions, the

person injured would be remediless.    But there must be a time when the governmental duty must begin and end; and likewise when the ministerial duty begins and continues.    In the present case, when the service of emptying the garbage boxes ended, the ministerial duty of keeping the adjacent street or sidewalk clear of dangerous obstructions began; and if the street was not kept clear, and by reason thereof the pedestrian was injured, the municipality would be liable in damages therefor.

The ministerial duty of keeping the adjacent sidewalk clear of obstructions has nothing to do with the duty of removing the garbage from the boxes.    That duty was always on the municipality. If the injury had occurred while the employee was performing the governmental function of clearing the box of garbage and was the *direct* and *immediate* result of that performance, the municipality would not be liable.

It is the character of the work done by the employees of the city, and not the name of the source of their employment, or the name of the department under which they work, which fixes and determines the character of the work, and the consequent liability, or non-liability, of the city for a negligent performance thereof; but it is the act itself which determines whether it is performed as a governmental or ministerial function.    It is therefore immaterial whether the work is done by an employee under the sanitary department of a municipality, or not, if in fact it is done by an employee of the municipality, and the character of the work is such as to make it either a governmental or ministerial service.    *Mayor &c. of Savannah v. Jordan* supra.    Applying the above rule, the maintenance, by a municipality, of a large waste-paper wooden box as a receptacle for trash and waste-paper, and the removal of the contents thereof by the employees of the municipality, is a duty connected with the preservation of the public health.

2.    The maintenance of such a box as is described in the second question propounded by the Court of Appeals, and the removal of the contents of such box, is an act by a municipality in the performance of its governmental functions.

3.    The courts will take judicial cognizance of the fact that the maintenance by a municipality of a box as described, and the removal of its contents, is a duty connected with the preservation of the public health, and is a part of the governmental functions of the municipality.

4. In answer to the last question we hold that *at the time of the alleged injury* the municipality was in the discharge of a *ministerial* duty relatively to keeping the sidewalk clear of obstructions; and therefore if the municipality was negligent under the facts of the case, it would be liable in damages.

In the recent case of *City Council of Augusta* v. *Cleveland,* 148 Ga 734 (98 S. E. 345), certified by the Court of Appeals, "A 'sand-trap' forming a part of the sewerage-drainage system of the City of Augusta was being cleaned out by the employees of the board of health of the city by removing therefrom sand and dirt. The powers and duties of the board of health and its employees, and their relations to the city, are fixed by the act of the General Assembly of Georgia creating the board (Acts 1880-1, p. 365). While the men cleaning out this sand-trap were employees of. the board of health of the City of Augusta, it is inferable from the evidence that they were paid by the City of Augusta. The sand-trap was on the edge of the sidewalk near the curbing, and the employees of the board of health, for the purpose of cleaning out the sand-trap, removed its iron lid (which was about 3½ or 4 feet square and weighed 200 or 250 pounds, and which, when the trap was closed, formed a part of the surface of the sidewalk used by pedestrians), and propped the lid up at an angle on the edge of the sidewalk by means of a steel bar some 2½ or 3 feet long, while they were engaged in cleaning out the trap. While this work was being done, a boy 7 years old, who was upon the sidewalk, walked up to the trap to see what was going on, and accidentally struck with his foot the steel bar which supported the lid, thereby knocking the prop down and causing the lid to fall upon and break his leg." It was held by this court in that case that the municipality was liable for the negligence of the employees (if they were negligent under the facts of the case) in improperly and insecurely propping up the lid of the sewer-head and in failing to warn the boy who was injured by the lid falling on him, of his danger in approaching it. In that case it was said: "While it is one of the governmental functions and duties of a city to effectively maintain its sewerage system, and while under the authority of the decision in *Love* v. *Atlanta,* supra, and the cases laying down the same doctrine as there stated, it follows that if, in the exercise of such functions and the discharge of the duties devolving upon the

department of the city government having charge of the matters relating to the public health, a private citizen is injured by the negligence of one of the city's servants in and about such work, no right of action arises against the city, nevertheless that doctrine must not be allowed to destroy the other equally well-established doctrine, that if a city negligently and tortiously allows obstructions to remain in its streets or sidewalks, or negligently fails to repair defects in a sidewalk or street, and a citizen in the exercise of due care is injured in consequence of such act of negligence upon the part of the city, there can be a recovery therefor against the city. Each of these two doctrines must be given effect, and has been given effect."

Several cases were cited in support of the ruling in the *Cleveland* case. *Mayor &c. of Savannah* v. *Waldner,* 49 *Ga.* 316, was a suit for damages against the city for injuries to the defendant in error and his horse, caused by falling into a sewer which was opened across the street. The contract to build a sewer had been let by the city to a contractor, and sublet by him to another. It was held that if the builders of the sewer negligently left it unguarded, by not having proper barriers or lights, or other protection against danger, and it was permitted to continue for an unreasonable or unnecessary time by the municipal authorities, who had notice, or there were facts from which notice could be reasonably inferred, the city was liable. *Mayor &c. of Savannah* v. *Spears,* 66 *Ga.* 304, was a case of damage to crops from the escape or overflow of water from a canal maintained by the city for drainage purposes. In this case the city was held liable. *Kea* v. *City of Dublin,* 145 *Ga.* 511 (89 S. E. 484), was a case where damage to property from a dumping-ground of the city was claimed; the city authorities on repeated requests had refused to abate the nuisance. It was held that a cause of action existed. *Mayor &c. of Waycross* v. *Houk,* 113 Ga. 963 (39 S. E. 577), was a petition to enjoin the city from continuing the location of the mouth of the main sewer of the city near the plaintiff's premises, or from extending it, as was contemplated, so that the sewage would be discharged directly on her land. It was held that plaintiff was entitled to the relief prayed for. In *Williams* v. *Mayor &c. of Washington,* 142 *Ga.* 281 (82 S. E. 659, L. R, A. 1915A, 325, Ann. Cas. 1916B, 196), the petition alleged that damages were sustained by the plaintiff on account of a per-

10

sonal injury resulting from stepping, at night, from a sidewalk into a depression caused by lowering the grade of a street by the city, a considerable time before the injury, but of which he was not aware; and that there had been no light for more than three weeks, which fact was brought to the attention of the city. It was held that this might be considered with other evidence in determining whether there was negligence in failing to keep the street in reasonably safe condition. *Langley* v. *Augusta,* 118 *Ga.* 590 (45 S. E. 486, 98 Am. St. R. 133), was a suit against the city to recover damages for continuing a nuisance by the construction of a drainage-ditch adjoining petitioner's property. In *Mayor &c. of Americus* v. *Chapman,* 94 *Ga.* 711 (20 S. E. 3), damages were recovered for personal injuries to the plaintiff by reason of his horse falling at night in a ditch which the city had dug across the street for sewerage purposes, of which petitioner was not aware, and which was not protected by a railing, light, or otherwise. The judgment upon the verdict awarding damages was affirmed. And see *City of Dalton* v. *Humphries,* 139 *Ga.* 556 (77 S. E. 790).

All of these were cases where the injury was done after the governmental function had ceased, or where the cause of the injury had been permitted to continue for an unreasonable or unnecessary time, and where the ministerial duty was imposed on the municipality to keep the streets clear of obstructions, and to prevent damage occurring by reason of them, etc. But none of these are cases where *at the time the injury* occurred, the municipality was in the *actual performance* of a governmental function.

*All the Justices concur, Beck, P. J., and George, J., specially.*