### 33717. CITY COUNCIL OF AUGUSTA *v.* HAMMOCK.

DECIDED MARCH 7, 1952.

*Congdon, Harper & Leonard,* for plaintiff in error.

*Peebles & Burnside,* contra.

CARLISLE, J. This is the second appearance of this case in this court. When the case was here before upon exception by the plaintiff to the sustaining of the defendant's general demurrer, this court held: "A petition alleging liability on the part of a municipality by reason of the falling from a tree of a dead limb, overhanging a sidewalk, which limb had been dead and in a dangerous condition for several months before the injury complained of, and alleging that the city knew of the condition of the limb or should have known of it by the exercise of ordinary care, stated a cause of action good as against a general demurrer." The material allegations of the petition are recited in the report of the case, supra, and need not be reiterated here. Upon the trial of the case the jury returned a verdict in favor of the plaintiff for $750. The defendant's motion for a new trial, based on the usual general grounds and five special grounds, was overruled and it excepted.

In special ground 3 of the motion for a new trial, error is assigned upon the following portion of the court's charge—"If, on the other hand, she was injured in a public street, then the municipality would be liable, under the rules of law I will presently give you in charge"—on the ground that this portion of the charge was "argumentative, misleading, and confusing to the jury, in that it suggested early in the instructions that the municipality would be liable for an injury in a public street irre-

spective of notice or negligence." The language of the court here complained of was immediately preceded by the following charge: "If the injury occurred in a public park, as I will define to you presently, then the municipality would not be liable, regardless of any question of negligence"; and in the language of the very sentence complained of the court qualified its instruction that the municipality would be liable for an injury in a public street with this phrase, "under the rules of law that I will presently give you in charge"; and later in the charge the court laid down the rules of law with reference to the obligations and responsibilities of the municipality in the maintenance of its streets by instructing the jury: "I charge you . . that a municipal corporation is not an insurer against accidents upon its streets and sidewalks . . a municipality is charged with the exercise of ordinary care and diligence to keep its sidewalks in a reasonably safe condition for the ordinary use of pedestrians. Whether that was done at the time and place under investigation here, is one of the issues you are called upon to determine from the evidence submitted for your consideration. I referred to the expression, 'ordinary care and diligence.' I charge you that ordinary care and diligence on the part of a municipality is that care which every prudent municipality takes to keep its side-walks in a reasonably safe condition for ordinary use by pedestrians. I further charge you that failure to do so is termed in law ordinary neglect. . . If you find that the defect, as contended by the plaintiff, existed, then the next question for you to determine is whether or not the city had notice of the defect, actually or by inference, prior to the alleged injury. Notice by inference is where the defect has existed for a sufficient length of time for the notice to be inferred. Should you find that the municipality had knowledge of the alleged defective condition, I charge you that such knowledge by the city must have been for such time before the alleged injury for the municipality to have remedied the alleged defect after receiving such notice." The principles of law involved in a case must necessarily be given in charge to the jury seriatim. "The court can not crowd every legal principle involved in a case in a separate and distinct paragraph." See *Edwards* v. *Atlanta B. & C. R. Co.*, 63 *Ga. App.* 212, 224 (10 S. E. 2d, 449). We think, therefore, that, in view

of the charge as a whole upon the question of a municipality's liability for injuries sustained on its streets and sidewalks, as quoted above, the portion of the charge complained of is not subject to any of the criticisms lodged against it in this special ground.

■ In special ground 4, error is assigned upon the following portion of the court's charge— "If, on the other hand, you find from the evidence that the walkway on which Mrs. Hammock [the plaintiff] claims to have been injured was a street in the sense that it was a thoroughfare used by pedestrians for travel, as distinguished from seeking recreation, then I charge you it would be a public street"—on the ground that the charge was "erroneous and not sound as an abstract principle of law." Immediately preceding the instruction complained of, the court charged: "Where a city maintains a park primarily for the use of the public, and intended as a place of resort for the pleasure and promotion of health of the public at large, its operation is in virtue of the governmental powers of the municipality, and no municipal liability would attach to the non-performance of the duties of the officers, agents, or servants of the city in respect to keeping the park safe for use by the members of the general public. Therefore, if you find from the evidence that this was a public park, that would complete your deliberations, and your verdict would be for the defendant." Viewed in its context, namely, in connection with the definition of a park, which is taken directly from, and in the exact words of, *Cornelisen* v. *City of Atlanta,* 146 *Ga.* 416 (91 S. E. 415), the portion of the charge complained of states a correct principle of law. Had the defendant wished an elaboration upon the court's definition of a street, a timely, written request therefor should have been presented to the trial court. See, in this connection, on the subject of streets and their ornamentation, *City of Albany* v. *Lippitt,* 191 *Ga.* 756, 763 (13 S. E. 2d, 807). There is no merit in this ground of the motion for a new trial.

■ In special ground 5, error is assigned upon the following portion of the court's charge—"Gentlemen of the jury, I charge you that a municipality is charged with the exercise of ordinary care and diligence to keep its sidewalks in a reasonably safe condition for the ordinary use of pedestrians"—on the ground

that it was "argumentative, confusing, and misleading to the jury for the reason that defendant adduced evidence to show this sidewalk ran through a park and, if that were true, a municipal corporation could not be liable for failure to maintain it." This portion of the charge is not erroneous for any reason assigned. The evidence was in conflict as to whether the sidewalk on which the plaintiff was injured traversed a park. The court charged the principles of law which would be applicable if the jury should find that the injury was sustained in a park. It was also necessary under the evidence to charge those principles of law which would be applicable should the jury find that the injury did not occur in a park but on a street. The instruction states a correct principle of law, and it is not apparent to us how such charge could have in any way misled or confused the jury. This ground of the motion for a new trial is without merit.

■ Special grounds 1 and 2 are amplifications of the general grounds and will be considered together with those grounds. In these special grounds the defendant contends that the evidence demonstrated that the sidewalk on which the plaintiff was injured traversed a public park, and that the defendant municipality would not be liable for any negligence on the part of its officers, agents, or servants in the maintenance of the park; and, further, that if the area which the sidewalk traversed was not a park but should be considered a part of the street, the municipality, under the evidence, had no notice, actual or constructive, of the alleged defect which is alleged to have caused the plaintiff's injuries.

It appears from the evidence that the plaintiff was injured when a dead limb fell from a tree on Greene Street in the City of Augusta, and struck her on the head. According to the defendant's evidence, "Greene Street is a public street of the City of Augusta and it extends from the eastern limits of the City, East Boundary Street, to Fifteenth Street, which is a distance of approximately two and a half miles. Down the center of that street from East Boundary Street to approximately the intersection of Fourteenth Street, there is a green ['parkway'], what is generally called a green, in the middle of it. The street is one hundred fifty-eight feet wide from property line to property line. It is ninety-one feet wide from curb line to curb line and

there are two driveways, one on the north side of the green and one on the south side of the green. This green in the center is thirty-nine feet wide. Down the center of the green there is a concrete walkway, which is five feet wide. These walkways extend the length of each block from East Boundary right to the Fourteenth Street intersection and along the side of them is the grass plots in which there are trees; there are flowers planted all along; there are benches for people who might wish to sit in the green or who might rest there. There are also a number of monuments along the length of this green. The first one is between Fourth and Fifth Streets in front of St. James Methodist Church and there is one on almost every block until you get to Thirteenth Street. On some blocks there are two monuments in the green down the center of the street. There are two lines of trees, one each side of the center walkway, growing in the grass plot on the side. The walkway in the center is used for ordinary walking from one place in the city to another, [and] used by children to skate on, [and] used by people to stroll on in the afternoon." It was from one of the trees growing along this center walkway that the plaintiff contends that a dead limb, about four and one half inches in diameter and seven feet in length, fell upon her head on January 2, 1950, and caused her enumerated injuries. The plaintiff testified: "The limb came out from one of the largest trees along there and evidently it had been dead six months or more. It was a dead limb. I looked at the limb after it hit me, and it [had?] cracked right half in two." A witness for the plaintiff testified concerning this green or parkway: "The paved sidewalk in the center of Greene Street . . runs from the end of the block . . the actual length of the block. The only thing I know it is used for is to walk on to keep from being in the middle of the street; you can walk down the walk there. As to whether there are any recreation facilities provided in that block, I will say there is a little seat at the end of each block. I couldn't say at each one of them. I know it is up next to the monument. . . The only thing I [have] seen people use it for was to go from one block to another, like a sidewalk on the side of Greene Street. . . The only purpose I should say of that sidewalk down the center of Greene Street would be if

someone would want to walk two or three blocks down Greene Street, they would want to use that center aisle to do that." This witness also testified that children used this center walkway for skating on occasion, but that they also used any sidewalks for that purpose if they were not watched.

█ Among the enumerated powers of the City of Augusta in its charter (Ga. L. 1922, pp. 537, 545), is the power "To establish, open, widen, extend, grade, improve, construct, maintain, light, sprinkle and clean public highways, streets, alleys, boulevards and *parkways,* and to alter or close the same; to establish and maintain *parks,* playgrounds and other public grounds . ." (Italics ours.) While the charter uses the term *parkway* and the term *park,* it defines neither. Under such circumstances the words should be construed according to their common and approved usage. "Park" and "parkway" are not synonymous. While each may include certain common features of ornamentation or recreation, the respective definitions of the two words as a whole are clearly distinguishable. Kupelian *v.* Andrews, 233 N.Y. 278 (135 N. E. 502). "A parkway, as we ordinarily observe it, includes a comparatively narrow strip of land, lying within the borders, and a part of a single street, withdrawn from travel and ordinary street uses and devoted to ornamental purposes and perhaps in a small degree to those of rest and recreation. It is defined in the Century Dictionary as 'A street of special width which is given a parklike appearance by planting its sides or centers or both with grass, shade trees and flowers. It is intended for recreation and for street purposes. In short, a parkway is essentially a boulevard giving to the term its modern meaning.' Webster's definition of a parkway is 'A broad thoroughfare beautified with trees and turf.'" Kupelian *v.* Andrews, supra. In other words, a parkway may be merely an ornamental part of a street, or an ornamented street may be considered a parkway. Under these definitions and the evidence in the case, the jury, who actually also viewed the scene, were authorized to find that the locus quo of the plaintiff's injury, the walkway in the center of the ornamented portion of the street, was a part of the public street. Nothing to the contrary is held in *Stubbs* v. *City of Macon,* 78 *Ga. App.* 237 (50 S. E. 2d, 866). That case was here on exception to a ruling on demurrer; and while the construction

of the street and parkway in that case was quite similar to the one in the present case, it was alleged in the petition, and was necessarily taken to be true, that the area in question "was operated by the defendant as a city park."

■ The plaintiff testified that the limb which fell upon her head was approximately four and a half inches in diameter and seven feet long, and that when it struck her it was so dead or rotten that it broke in two, and that apparently it had been dead for several months. The jury viewed the scene, and while they did not see the limb itself, they presumably saw the tree and the place on the tree from which the limb fell.

" 'If a municipal corporation has not been negligent in constructing or repairing the same, it is not liable for injuries resulting from defects in its streets when it has no actual notice thereof, or such defect has [not] existed for a sufficient length of time for notice to be inferred.' Code, § 69-303. The 'defects in its streets' for which a municipal corporation may be held liable under the provisions of this Code section have been held to include objects adjacent to, and suspended over, the municipality's streets and sidewalks, the presence of which renders the use of these thoroughfares more hazardous. *Higginbotham* v. *City of Rome,* 24 *Ga. App.* 286 (100 S. E. 720); *City of Macon* v. *Stevens,* 42 *Ga. App.* 419 (156 S. E. 718); *Parker* v. *Mayor &c. of Macon,* 39 *Ga.* 725 (99 Am. D. 486); *Hammock* v. *City Council of Augusta,* 83 *Ga. App.* 217 (63 S. E. 2d, 290). 'Questions of negligence and diligence are generally for determination by the jury; and where a suit is brought against a municipality, as in the instant case, for injuries . . alleged to have been brought about by the existence of an obstruction in a public street of the municipality which was not shown to have been placed there by the city, the issue of whether or not, where no actual notice of the obstruction is shown, it had existed for a sufficient length of time to charge the city with negligence in failing to discover and remove the same should be generally left to the determination of the jury.' *City of Barnesville* v. *Sappington,* 58 *Ga. App.* 27, 29 (197 S. E. 342); *City of Rome* v. *Brinkley,* 54 *Ga. App.* 391 (2) (187 S. E. 911); *City of Dalton* v. *Joyce,* 70 *Ga. App.* 557 (29 S. E. 2d, 112); *City of Rome* v. *Hanson,* 58 *Ga. App.* 617 (1) (199 S. E. 329). While it is true

that a 'city would not be liable for the existence of a latent defect not discoverable by the exercise of ordinary care, it is the well-established general rule that whether the defect was such as the municipality should have discovered the same in the exercise of ordinary care in keeping the streets and sidewalks in a reasonably safe condition is a question for the jury. *City of Rome* v. *Hanson*, supra." *City of Bainbridge* v. *Cox*, 83 *Ga. App.* 453 (64 S. E. 2d, 192).

Under the foregoing rules of law and the evidence in the case, the jury were authorized to find that the limb was of a size, in such a state of decay, and being in that state of decay must have existed for such a length of time, that the city, in the exercise of ordinary care, could have discovered and removed the decayed limb. It follows, therefore, that the evidence authorized the verdict, and there being no merit in any of the special grounds, as indicated in the foregoing divisions of this opinion, the trial court did not err in overruling the motion for a new trial.

*Judgment affirmed. Gardner, P. J., and Townsend, J., concur.*