43240. PHILLIPS, by Next Friend v.
TOWN OF FORT OGLETHORPE et al.

SUBMITTED JANUARY 5, 1968—DECIDED JUNE 7, 1968—REHEARING DENIED JUNE 25, 1968—

*Frank M. Gleason,* for appellant.

*John E. Wiggins,* for appellees.

*Henry L. Bowden, Martin McFarland,* amicus curiae.

DEEN, Judge. The duty imposed by *Code* § 69-303 on municipalities to keep the streets in a reasonably safe condition for travel is a ministerial or corporate function, a violation of which resulting in injury to the plaintiff is actionable. *Herrington v. Mayor &c. of Macon,* 125 Ga. 58 (4) (54 SE 71); *Mayor &c.*

*of Milledgeville v. Holloway,* 32 Ga. App. 734 (1) (124 SE 802);
*Mayor &c. of Macon v. Smith,* 14 Ga. App. 703, 706 (82 SE
162); *City of Waycross v. Howard,* 42 Ga. App. 635 (157 SE2d
247). As against a general demurrer, and disregarding mere
legal conclusions of the pleader, the real issue in this case is
whether the maintenance of a defective traffic light by the city,
with knowledge of the defect, in such manner as to *cause* auto-
mobiles relying upon it to collide with each other constitutes
negligence in the exercise of a governmental or ministerial func-
tion, for we believe the conclusion that it is negligence, if proved
as alleged, is beyond dispute. Applying the Code section, we
must accept that by definition the duty to keep the streets in
a reasonably safe condition for travel is a ministerial duty. The
facts alleged show that the street, with the traffic light showing a
"go" signal in all directions, was not safe for travel and every
car approaching the intersection was, by virtue of this fact, on
collision course. The contention is, however, that regardless of
these facts the maintenance of the traffic light system is gov-
ernmental, as a part of the police power of the municipality,
and this also is true. A fine but valid distinction has been
drawn in similar cases. In *Mayor &c. of Savannah v. Jones,*
149 Ga. 139 (4) (99 SE 294) the court held: "The municipality
was in the performance of a *governmental function* in maintain-
ing and emptying the box above described, but the municipality
was also under *ministerial duty* to keep its streets and sidewalks
free from obstruction such as alleged. Consequently, under the
facts alleged in the petition, *at the time of the injury* the ex-
ercise of the governmental function of emptying the box had
ceased, and the ministerial duty of keeping the streets and side-
walks free from obstructions was obligatory, and the municipal-
ity would be liable in damages for negligence." The duty of
the municipality is to keep its streets in reasonably safe con-
dition for travel by ordinary modes, and it will be "liable for
damages for injuries sustained in consequence of its derelictions
in this regard, *no matter by what cause* the streets may have
become defective and unsafe, where the city knew or should
have known of the defect in time to repair it or to give warning
of its existence." See *City of Atlanta v. Robertson,* 36 Ga. App.

66 (1) (135 SE 445). In that case the defect lay with the defective maintenance of a sewerage system, a governmental function, resulting in an unsafe traffic condition by which the plaintiff was injured. See also *Allison v. Medlock,* 224 Ga. 37 (4) (159 SE2d 384). Likewise, the maintenance of a park is a governmental function, but an object protruding from the park above the sidewalk, rendering travel on the sidewalk unsafe, is actionable. *City of Macon v. Stevens,* 42 Ga. App. 419 (1) (156 SE 718).

A case closely in point is Johnston v. City of East Moline, 405 Ill. 460 (91 NE2d 401). A municipal street intersection was controlled by four sets of traffic lights or standards. The one on the northwest corner was knocked out and the city, with knowledge of the condition, allowed traffic to continue for several days controlled by only three standards. As a result of the absence of the traffic signal, an automobile which would otherwise have had the right of way collided with another automobile entering at right angles on a green light. The court held in part: "The question of what the city did or permitted at the intersection, in the matter of controlling or not controlling traffic after the northwest standard was removed, is before us, and whether or not its acts and omissions in that regard were in the exercise of a governmental function or a corporate [ministerial] duty must be decided. . . A municipal corporation acts judicially or exercises discretion when it selects and adopts a plan in the making of public improvements, but as soon as it begins to carry out that plan it acts ministerially and is bound to see that the work is done in a reasonably safe and skillful manner. . . Appellant having elected to install, and having installed the signal system in question, it was a corporate duty not to permit its operation in a manner calculated to cause injury to others . . . it failed to perform a corporate duty." "The 'defects in its streets' for which a municipal corporation may be held liable under the provisions of this Code section [§ 69-303] have been held to include objects adjacent to, and suspended over, the municipality's streets and sidewalks, the presence of which renders the use of these thoroughfares more

66

hazardous." *City Council of Augusta v. Hammock,* 85 Ga. App. 554, 560 (69 SE2d 834).

Some of the Georgia cases have stated broadly that the maintenance of traffic control systems by municipalities is a governmental function, and the difficulty lies in the meaning of the word *maintenance* within the context of the case. In *Stanley v. City of Macon,* 95 Ga. App. 108 (97 SE2d 330), one of the cases where this language appears, the defect in the traffic control installation was above the street and allowed the escape of high voltage current so that a Georgia Power Company employee climbing the pole in connection with his own duties for the power company came in contact with it. The court specifically pointed out (p. 110): "It cannot reasonably be said that defective maintenance of a traffic control signal 15 feet above the street at a place which could not be reached except by climbing a pole is in such a location as to constitute defective maintenance of the streets and sidewalks along which normal pedestrian and vehicular traffic moves, and liability against the city cannot be predicated upon this theory." Had the defect inhibited the reasonably safe flow of traffic, an opposite conclusion would doubtless have been reached, and this is where *Code* § 69-303 comes into play. In *Arthur v. City of Albany,* 98 Ga. App. 746, 747 (106 SE2d 347) it was held that the city's discretion as to the location of stop signs was governmental in character. This being so, the city could either erect or remove the signs at will, and the fact that one previously erected and removed was not replaced did not render it liable. See *Code* § 69-302. In *City of Rome v. Potts,* 45 Ga. App. 406 (165 SE 131) the plaintiff complained that the timing sequence of the traffic light was too fast, but the decision as to how the light should be timed, like the decision to erect it in the first place, was within the discretion of the municipal authorities.

The allegations of the present case, if proved, established that the municipality was negligent in not repairing its traffic control device, that the malfunction of the device was a proximate cause of the plaintiff's injuries, and that the negligence alleged rendered the use of the streets less safe.

The trial court erred in sustaining the general demurrer.

*Judgment reversed. Felton, C. J., Jordan, P. J., Hall and Whitman, JJ., concur. Felton, C. J., and Jordan, P. J., also concur specially. Bell, P. J., Eberhardt, Pannell, and Quillian, JJ., dissent.*

JORDAN, Presiding Judge, concurring specially. I concur with the majority opinion and would reverse for the additional reason that in my opinion the petition alleges facts sufficient to constitute a nuisance, the theory upon which the petition is based. If it can be said that the facts alleged are sufficient to constitute a nuisance, then the defendant municipal corporation, like any other tortfeasor, would be liable for damage resulting from the nuisance, regardless of whether it arose from the construction and maintenance of a governmental function or not. *Ingram v. City of Acworth,* 90 Ga. App. 719, 720 (84 SE2d 99); *Archer v. City of Austell,* 68 Ga. App. 493, 497 (23 SE2d 512); *Delta Air Corp. v. Kersey,* 193 Ga. 862 (3) (20 SE2d 245, 140 ALR 1352).

The allegations of this petition (which must be taken as true as against general demurrer, this case having been passed on by the trial court prior to the effective date of the Civil Practice Act) are sufficient to allege a nuisance and thus bring into issue the question of liability of the Town of Fort Oglethorpe. The alleged facts which take this case beyond *Stanley v. City of Macon,* 95 Ga. App. 108 (97 SE2d 330); *Arthur v. City of Albany,* 98 Ga. App. 746 (106 SE2d 347), and like cases are that the mayor, the chief of police, and all the aldermen knew that the traffic lights at this intersection (that of a city street with U. S. Highway #27) were not working correctly and had not been for two weeks and that after knowledge of said defective condition failed to repair and continued to maintain and operate them in a defective condition, and that said mayor and chief of police knew that six automobiles had collided at this intersection on the day plaintiff was injured and did nothing to correct the situation.

Such allegations here of *knowledge* of a defective condition and *continued maintenance* of the same is exactly what this court said was lacking in *Stanley v. City of Macon,* supra, p. 111, pointing out that "herein lies one of the important distinctions

68

between mere negligence and nuisance (in regard to the latter the question of negligence is immaterial), although nuisance may result from negligence." Since such allegations as were lacking in that case are present here, it moves this case from the realm of mere negligence to that of gross nuisance. A more flagrant nuisance on the part of a municipality can hardly be imagined than that of knowingly operating a traffic signal which flashes the green "go" signal to vehicular traffic approaching a busy intersection from all directions, thus requiring drivers who must proceed in accordance with such signals to engage unknowingly and unwillingly in a game of "Russian roulette."

It is clear that any obstruction to a public street in a city is a public nuisance. *Mayor &c. of Columbus v. Jaques*, 30 Ga. 506, 512, citing an old English case to the effect that "all injuries whatsoever to a highway, as by digging a ditch or making a hedge across it, or laying logs of timber in it, or by doing *any other* act which will render it less commodious to the King's subjects, are public nuisances at common law." (Emphasis supplied.) In *City Council of Augusta v. Jackson*, 20 Ga. App. 710 (93 SE 304), it was alleged that the city granted a permit to a fraternal order to maintain and operate a street carnival and shooting gallery on certain public streets and that plaintiff's 13-year-old son while walking along a street was hit and killed by a bullet from the shooting gallery. This court, in affirming the overruling of the city's demurrer to the petition, held such unauthorized obstruction to be a nuisance and that "the plaintiff not only avers that the defendant expressly permitted an alleged enterprise to be put in operation, but also avers that the defendant then and there knew, and had sufficient opportunity to put it on notice, as to the existence of such dangerous shooting gallery," (p. 712), concluding that "the plaintiff's petition charges a double wrong on the part of the defendant city, namely, causing a public street to be put in a dangerous condition, and then *knowingly permitting it to remain in such condition*. It charges an act of commission as well as an omission, each of which is a violation of that duty imposed by law upon every municipality to keep its streets in a reasonably safe condition for passage and travel." P. 713. (Emphasis supplied.)

While the maintenance and operation of the defective traffic light was not a *physical* obstruction within itself, can it be said to produce a situation any less dangerous than a ditch, a hedge, logs of timber, a shooting gallery, or some other physical obstruction across the street? Indeed it was more of a mantrap and deathtrap than any of these and was sufficient to charge the defendant municipality "with causing a public street to be put in a dangerous condition and then knowingly permitting it to remain in such condition."

The facts alleged here also distinguish this case from *Arthur v. City of Albany,* 98 Ga. App. 746, supra, where its was held that the city was not liable in *failing* to maintain a stop *sign* at an intersection where one had once been erected, such failure being insufficient to allege the maintenance of a nuisance. Such would be the result here had the defendant taken down the traffic signal or merely ceased operating it after its defective condition became known. What puts this case in the nuisance category is the allegation that after *knowledge* of the dangerous situation created by the faulty light, the defendant city *continued to maintain* and operate it in a defective condition, a dangerous, positive act of commission rather than the allegation of omission or failure to maintain as in the *Arthur* case, supra.

2. It is said in the dissent that even when a nuisance is created by the operation and maintenance of equipment used in a governmental function "no recovery can be had because no invasion of, or interference with the enjoyment of, real property of the plaintiff in proximity to the alleged nuisance is shown," citing *Stanley v. City of Macon,* supra. This seems to be in conflict with what this court, speaking through Judge Powell, said in *Towaliga Falls Power Co. v. Sims,* 6 Ga. App. 749, at p. 752 (65 SE 844), "At common law a nuisance was regarded only as an injury to some interest in land. Blackstone's definition of a private nuisance is 'anything done to the hurt or annoyance of the lands, tenements, or hereditaments of another.' The definition adopted in our Code is broader 'A nuisance is anything that worketh hurt, inconvenience, or damage to another.' Civil Code, § 3681. An examination of the authorities will show that the modern tendency of the American courts is

to break away from so much of the common law rule as confined redress on account of nuisances to the damage done to some interest in real property, and as gave remedy only to persons having interests in lands. . . Under our Code we think the rule is not so rigid, but that one who has been specially endamaged by a nuisance can recover from the wrongdoer, though his damage consists in an injury to his purse or person, irrespective of whether he has had an interest in real estate damaged or not."

The *Towaliga* case was cited with approval in *Central Ga. Power Co. v. Nolen,* 143 Ga. 776 (85 SE 945), in which Justice Lumpkin, speaking for the court said, "The injury here complained of is to health, not property. It will not be presumed that the legislature intended to authorize a corporation or an individual negligently to create a nuisance tending to destroy the lives or injure the health of others without remedy for damages resulting therefrom, unless it should clearly so appear. . . In this State damages recoverable on account of a nuisance are not limited to injury to realty; but injury to health may furnish a basis for such recovery." *Code* § 72-103 provides, "If a public nuisance should cause special damage to an individual, in which the public does not participate, such special damage shall give a right of action." Any injury to one's health or limb, or to one's purse, is a special damage and it matters not that others within the sphere of the operation of the nuisance might or might not be affected. See *Hunnicutt v. Eaton,* 184 Ga. 485 (191 SE 919) and cases therein cited.

In any event, the Georgia rule does not require that a public nuisance cause damage to real estate before any recovery can be had by someone who suffers an injury or damage to personalty as a result thereof, where it is shown that the nuisance arises out of an obstruction in or to a street which interferes with the public right of passage. As pointed out above the continued operation of a defective traffic signal with knowledge of its defect, such as the situation here alleged to exist, amounts to an interference with the orderly flow of traffic and the public's right of passage more substantially than a physical obstruction and should come under the same rule.

Chief Judge Felton also joins in this special concurrence.

PANNELL, Judge, dissenting. The majority opinion is predicated upon two erroneous theories: (a) that the maintenance of a traffic signal light is a ministerial function, and (b) that the failure to properly maintain a traffic signal light creates a defect or obstruction in the street and the Town of Fort Oglethorpe is liable under *Code* § 69-303. The concurring opinion is based upon the erroneous premise that recovery can be had on the theory of an injury caused by the maintenance of a nuisance for which the city would be liable irrespective of whether it be created by the exercise of a governmental or of a ministerial function, even though such nuisance had no effect upon the enjoyment of real property or rights therein.

Whatever my personal views and sympathies might be, I am constrained by the prior decisions of this court and of the Supreme Court of this state to disagree with these positions.

These opinions seek to distinguish certain cases and rely on language lifted from the context in others and completely disregard the rulings in other cases by this court which distinguish the very cases the majority rely upon, and show that they do not apply to cases such as the present one.

Let us first determine what has been previously held in cases which have not been overruled and which are binding upon us. In *City of Rome v. Potts*, 45 Ga. App. 406, 410 (165 SE 131), this court ruled: "The alleged negligence of officers of the municipality in *operation of the traffic light* established *and maintained* under provisions of the traffic code of the City of Rome, in that they did not allow a reasonable time between change of lights for plaintiff to cross the street, does not change the ruling herein made. *Operation of the traffic light conducted in behalf of the public safety was a governmental function, for the negligent performance of which the city is not liable. Mayor &c. of Savannah v. Jones*, 149 Ga. 139 (99 SE 294) [erroneously distinguished and relied on by the majority here]; Civil Code (1910), § 893; 43 CJS 964, § 1245." (Emphasis supplied.) This is an express ruling that the operation of a traffic light is a governmental function. If this is so, the failure to operate or the improper operation of it because of negligent maintenance does not remove it from the governmental function area.

In *Stanley v. City of Macon*, 95 Ga. App. 108, 109 (97 SE2d 330), this court again ruled: *"Operation of a traffic light conducted in behalf of the public safety is a governmental function, for the negligent performance of which the city is not liable. City of Rome v. Potts*, 45 Ga. App. 406, 410 (165 SE 131); *Stubbs v. City of Macon*, 78 Ga. App. 237 (2b) (50 SE2d 866) . . . *Nothing to the contrary is held in the case of Mayor &c. of Savannah v. Jones*, 149 Ga. 139 (99 SE 294) [the majority here say the contrary was held and used this case to support its opinion], which holds that while a city in the emptying of its trash cans is performing a governmental function it may also, by removing and placing the lid in such a manner as to obstruct the street, be negligent in its ministerial duty of keeping the sidewalks free from obstruction and be liable on this theory. *It cannot reasonably be said that defective maintenance of a traffic control signal 15 feet above the street at a place which could not be reached except by climbing a pole is in such a location as to constitute defective maintenance of the streets and sidewalks along which normal pedestrian and vehicular traffic moves, and liability against the city cannot be predicated upon this theory."* (Emphasis supplied.) Also in reference to the premise upon which the concurring opinion is based, that is, the nuisance theory, the court in the *Stanley* case disposed of that on two grounds: (a) that there was no knowledge on the part of the city as to the defect in the traffic light (in the present case, there are allegations as to knowledge) and, as is true of the present case, the court in the *Stanley* case further held: "(b) The petition is also insufficient to show that the city was maintaining a nuisance of which the plaintiff, an employee of the Georgia Power Company (*as distinguished from the utility who owned the property in question*) could complain. This court adheres to the often repeated designation of an actionable private nuisance as one which is 'specially injurious to an individual by reason of its proximity to his home.' *Lewis v. City of Moultrie*, 27 Ga. App. 757 (110 SE 625); *Stubbs v. City of Macon*, 78 Ga. App. 237 (1) (50 SE2d 866); *Kea v. City of Dublin*, 145 Ga. 511 (89 SE 484); *City Council of Augusta v. Cleveland*, 148 Ga. 734 (98 SE 345); *Ingram v.*

*City of Acworth,* 90 Ga. App. 719 (84 SE2d 99); *Delta Air Corp. v. Kersey,* 193 Ga. 862 (20 SE2d 245, 140 ALR 1352). The origin of this limitation on the nuisance doctrine dates back to the common law, which construed nuisance as an infringement on a man's freehold. Garrett, Nuisances, 3rd Ed., p. 2. It was observed in *State ex rel. Boykin v. Ball Investment Co.,* 191 Ga. 382, 389 (12 SE2d 574), that our statutory definition of nuisance, which corresponds with that found in Blackstone, 'was not intended to change the common law definition of a nuisance.' While it is no longer required that the plaintiff in a nuisance case show, as he had to do at common law, a freehold interest in the property affected by the nuisance, and while he no longer need show damage to the realty itself, he must still show that the condition is injurious by reason of its relationship to his home or property in the neighborhood where it is located, or else that it is injurious by reason of its constituting an obstruction to streets or sidewalks and like places used by the public generally for passage, which obstructions were at common law regarded as public nuisances because they interfered with the public right of passage. See Garrett, Law of Nuisances, supra, p. 3. In 75 ALR, p. 1196 at page 1198 it is also stated: 'As noted above, it is generally held that the municipality, as owner of real estate, owes the same duties to the owners of neighboring lands, with respect to the use of its own, as are owed by a private owner of land, and hence that the municipality is liable to other landowners, where it makes such use of its land as to constitute a nuisance, regardless of whether it is engaged in performing a governmental or private function.' This rule is equally applicable, of course, whether the actual injury is personal or property damage. Nothing in *Towaliga Falls Power Co. v. Sims,* 6 Ga. App. 749 (65 SE 804) authorizes a contrary ruling [in the present case the concurring opinion cites this case as authority], for in that case the question of the plaintiff's interest in the property affected by the nuisance was first considered, and it was held that he, as a tenant at will of the property, had such an interest therein as would sustain the action. What is said thereafter, to the effect that one specially damaged by a nuisance can recover from a wrongdoer, though his damage

74

consists in an injury to purse or person, irrespective of whether he has had an interest in real estate damaged or not, refers to the measure of damages, the holding being that one in the plaintiff's position might maintain the action for personal injuries regardless of whether he personally would also be entitled to recover for the damage to the real estate." (Emphasis supplied). In *Arthur v. City of Albany*, 98 Ga. App. 746, 757 (106 SE2d 347), in reference to the failure to maintain a stop sign, this court said: "1. The trial court did not err in sustaining the general demurrers. Count 1 of the petition was insufficient to set forth a cause of action on account of the maintenance of a nuisance. *The allegations of the petition fail to show that the condition created by the absence of the stop sign was injurious to the plaintiff by reason of its relationship to her home or property located in the neighborhood, or that it was expressly injurious to the plaintiff as a member of the public as constituting an obstruction to the streets or sidewalks. Stanley v. City of Macon, 95 Ga. App. 108, 112 (2b) (97 SE2d 330). 2. The operation and maintenance of traffic lights and other traffic control devices is a governmental function* conducted on behalf of the public safety and for the negligent performance of which municipal corporations are not liable. *Code* § 69-301; *City of Rome v. Potts*, 45 Ga. App. 406, 410 (165 SE 131). *Such functions are not related to the maintenance of the streets as such, and liability of a municipality for the negligent failure to maintain a stop sign after it is once erected cannot be predicated on the theory that it is a part of street maintenance.*

'In deciding whether to erect the stop sign in the first place and in erecting it, the municipality exercises its legislative or judicial powers, and in determining whether to maintain the stop sign or traffic control device or to operate it, and in determining whether to replace it once it has been destroyed or removed, are all a part of the same exercise of legislative or judicial power, *and the duty of erecting the device cannot be divorced from the duty of maintaining it so as to say that the erection of the stop sign is an exercise of the legislative function, but that its maintenance or re-erection is merely ministerial.* Long recognized limitations on municipal liability for

the negligent performance of governmental duties will not be abrogated by this kind of judicial legislation. *City of Cumming v. Chastain,* 97 Ga. App. 13 (102 SE2d 97).

"It follows that the petition failed to set forth a cause of action against the municipality in any of its counts, and the trial court did not err in sustaining the general demurrers and in dismissing it. See *Stubbs v. City of Macon,* 78 Ga. App. 237 (2b) (50 SE2d 866)." (Emphasis supplied.) In *Stubbs v. City of Macon,* 78 Ga. App. 237 (50 SE2d 866), this court ruled as follows: "1. Municipalities are liable for the acts of their officers, agents, and servants *only in instances as follows:* (a) In the performance of any function where a statute specifically provides for such liability (see specific statutes). (b) For neglect to perform or improper or unskillful performance of their ministerial duties (see *Code* § 69-301). (c) For the performance of their governmental functions where the same amounts to the taking or damaging of private property for public purposes without first making adequate compensation therefor (see Art. I, Sec. III, Par. I of the Constitution, *Code Ann.* § 2-301), *or the creation of a nuisance dangerous to the life and health of persons because of its proximity to them in the enjoyment of their property.* See *Kersey v. Atlanta,* 193 Ga. 862 (20 SE2d 245, 140 ALR 1352), and cases there cited. . . 4. The petition in the instant case shows that the municipality was engaged in the operation of a city park, and in the operation of its parking meters, both governmental functions, in connection with the injury of the plaintiff; and that the conduct of its officers, agents, and servants was not such as to amount to the taking or damaging of private property for public purposes without first making adequate compensation therefor; nor is such a nuisance alleged as was dangerous to the life and health of persons because of its proximity to them in the enjoyment of their property. Therefore the judgment of the trial court sustaining the demurrer to the petition is without error." In this case, a water-meter box was left about 7 inches above the level of the pavement after parking meters were installed next to the paved walkway in the park.

These cases have clearly and distinctly ruled (1) that the

maintenance, even though negligently done, of a traffic control device, whether a stop sign or an electrical signal, is a governmental function and (2) that where a nuisance is created by a governmental function and injury caused therefrom, no recovery can be had (a) unless there has been an invasion of a real property right or a right of enjoyment of real property or if this is not shown (b) it must be shown that it is a nuisance which constituted an obstruction to the streets or sidewalks. The very cases cited by the majority opinions show that the nuisance must relate to injuries to real estate or injuries to enjoyment of real estate. I do not dissent from the majority on the ground that there was no nuisance created by the continued maintenance of the defective light, but I do dissent on the ground that the nuisance here involved is not the type of nuisance for which recovery could be had where a governmental function was being carried on. The governmental immunities doctrine and law as established which permits the growth and operation of small governmental units, as well as aids the continuance of larger units of government should not be changed by the courts, but if same is to be done, should be done by legislation. If it is done in that manner, safeguards can be erected to permit small governmental units to survive and citizens to be protected in their rights. In every case cited by the majority opinion, the operation of a governmental function caused an actual physical obstruction in the street, or the nuisance created, affected the enjoyment of rights in and to real property, even though damages for injury to the person and personal property were the measure of the right to recover. Cases of this type are distinguished and declared inapplicable to cases involving traffic lights which themselves do not physically obstruct the streets in the cases from which we have quoted. In my opinion, the following is a correct solution of this case:

1. The operation of a traffic control system by a municipal corporation being a governmental function in the exercise of its police power, the municipality is not liable for injuries caused by the negligent installation and maintenance of such equipment. *City of Rome v. Potts,* 45 Ga. App. 406, 410, supra; *Stanley v. City of Macon,* 95 Ga. App. 108, supra; *Arthur v. City of Al-*

*bany,* 98 Ga. App. 746, supra; *Mayor &c. of Savannah v. Jones,* 149 Ga. 139, supra.

2. While it may be true that a municipality may be held responsible for the creation of a nuisance in connection with the installation, operation and maintenance of equipment used in a governmental function (*Stanley v. City of Macon,* 95 Ga. App. 108, 110 (2), supra), yet where, as in the present case, it appears that the injury was to the person of, and the vehicle of, the plaintiff arising out of a collision with the vehicle of another defendant occurring at a street intersection where a signal light operated and maintained by the municipality was showing green on both intersecting streets, no recovery can be had because no invasion of, or interference with the enjoyment of, real property of the plaintiff in proximity to the alleged nuisance is shown. *Stanley v. City of Macon,* supra; *Stubbs v. City of Macon,* 78 Ga. App. 237 (1), supra.

While the damages are not limited to the injury to the realty, and damages may be recovered for injuries to health (*Central Ga. Power Co. v. Nolen,* 143 Ga. 776, 778 (85 SE 945)) and loss of business profits (*Barham v. Grant,* 185 Ga. 601, 605 (7) (196 SE 43)), such damages to the person and to the property must arise out of an invasion of a property right relating to real estate. See *Stanley v. City of Macon,* 95 Ga. App. 108, 113, supra.

3. A signal light, installed by a municipality on a public street, operating improperly, is not an obstruction in the public street, so as to permit the allowance of damages for the negligent failure to maintain its streets properly. *Arthur v. City of Albany,* 98 Ga. App. 746, 747 (2), supra. It not appearing that the signal light itself was physically obstructing the street (see *Mayor &c. of Savannah v. Jones,* 149 Ga. 139, supra), there was no change from a governmental function to a ministerial function requiring the removal of the signal light from the street. See *Mayor &c. of Savannah v. Jones,* supra.

4. The trial court did not err in sustaining the demurrer to the petition and dismissing the same as to the Town of Fort Oglethorpe.

While all the legal issues as decided by the majority have been

included in this dissent, there is another ground upon which I feel compelled to dissent from the ruling in the majority opinion insofar as it authorizes a recovery based upon a ministerial function and an obstruction in the street for which recovery may be had under *Code* § 69-303. I do this for the very simple reason that the plaintiff in his action expressly alleged that the maintenance and operation of the light was a governmental function and sought recovery solely on the grounds that the defendant had committed a public nuisance; and even when setting forth the allegations of negligence prefaced them with the following statement: "That while this cause of action against the Town of Fort Oglethorpe is based on the commission of a nuisance and not negligence, such defendant was negligent and careless in the operation of traffic control lights at such intersection, and committed the following acts which constituted a nuisance."

Even if I should agree with the majority that a recovery could be had for negligence against the city under the facts alleged in the present case, I could not agree to the application of such rule to this case as a recovery was not sought upon those principles. This court cannot grant that which is not asked or sought. It can only correct the errors of the trial judge. If, according to the opinion of the majority, the plaintiff erroneously abandoned his right to recover based on negligence in the maintenance of streets, that is an error that this court cannot correct. In my opinion, the plaintiff properly conceded that no cause of action existed upon such a basis. I also concur with the trial judge in his ruling that no other basis existed for recovery against the Town of Fort Oglethorpe.

Whether or not a recovery may be had against the city officials who may be responsible for the alleged flagrant violation of their duties is not a question presented to this court for decision.

I am authorized to state that Presiding Judge Bell and Judges Eberhardt and Quillian concur in this dissent.